GEORGE B. HIGGINS & COMPANY v. CHICAGO, BURLINGTON
& QUINCY RAILROAD COMPANY.[1]

January 26, 1917.

Nos. 20,006, 20,007—(156, 157).

**Carrier — perishable freight — burden on carrier, when.**

1. A common carrier of perishable freight is not an insurer of its delivery at destination in an undamaged condition. The rule in this state is that, when the shipper has shown that the damage occurred while the goods were in the carrier's possession, a *prima facie* case of liability is made out, and the burden of proof is on the carrier to show that the damage was not caused by its negligence. Such a showing is a good defense, and it is not necessary to prove that the loss was caused by the natural tendency to decay.

**Carrier — receiving shipment from connecting carrier — undiscoverable defect.**

2. It was admitted that the damage was caused from the freight, pota-

[1]Reported in 161 N. W. 145.

toes in sacks, being loaded in cars in which the wood of the bottoms was permeated with salt. These cars were furnished by a prior carrier, and the potatoes transported in them over the line of such carrier and delivered to defendant, a connecting carrier, which continued the shipment to its destination on its line. The unsuitable character of the cars was not discoverable by defendant on any reasonable inspection. It is *held* that the duty of defendant when it received the cars from the connecting carrier was to use due care, skill and diligence in inspecting them, that it would be liable for a breach of such duty, but not for a defect which was unknown to it and not discoverable by the exercise of due care, skill and diligence.

**Verdict sustained by evidence.**

3. The evidence was sufficient to sustain the verdict in one of the two cases on the question of the extent of the damages, and there was no error in receiving the evidence bearing on that question.

Two actions in the district court for Hennepin county, one to recover $1,032.61 for damage to a shipment of potatoes over defendant's road to New Orleans, Louisiana, and the other to recover for damage to two shipments to St. Louis, Missouri. The actions were tried together before Molyneaux, J., who at the close of the testimony denied defendant's motions for directed verdicts, and directed a verdict in one case for the plaintiff, and a jury which returned verdicts aggregating $1,630.74. From an order denying its motions for judgment notwithstanding the verdict or for new trials, defendant appealed. Reversed and judgment for defendant ordered in one case. Affirmed in the second case.

*Barrows, Stewart & Ordway,* for appellant.

*H. R. Hewitt,* for respondent.

BUNN, J.

These cases, tried together in the court below, originally involved 18 causes of action, each for damages to a carload of potatoes. Only three of the causes of action are involved on this appeal, the others having been disposed of. Two of the three causes of action concern shipments of potatoes from St. Paul to St. Louis, the other a shipment from St. Paul to New Orleans. The St. Louis shipments involve the same questions, the New Orleans shipment different questions.

First, as to the facts in regard to the St. Louis shipments. Plaintiff

buys potatoes in Minnesota and ships in carload lots to points out of the state. The two shipments in question originated at Mora, Minnesota, on the line of the Great Northern Railway Company. The potatoes were loaded by plaintiff in two cars furnished by the Great Northern Company. They were sacked, and each car contained 240 sacks. The cars were consigned to plaintiff at Chicago, with instructions to hold at St. Paul. On arrival at St. Paul, new bills of lading were issued by defendant, and the cars consigned to St. Louis. The potatoes were not unloaded at St. Paul, but were inspected there by plaintiff. This was in accord with the established custom observed by plaintiff in its extensive business. On the arrival of these two cars at St. Louis, it was found that the potatoes had started to decay. After they were unloaded it was discovered that the cause was that the cars had salty bottoms, due to their having been used before for shipping hides or other articles where salt or brine was used. The testimony was conclusive that this condition could not be discovered until the potatoes were unloaded, and was not observable even then on casual inspection, as the salt or brine had worked into the wood of the car floor or sides. It was stipulated between counsel on the trial that the damage to these two cars was all due to the fact that the potatoes were loaded and shipped in cars with salty bottoms.

The trial court, though at first taking the view that defendant was not liable for the damage to these cars, finally directed a verdict for the plaintiff on these causes of action, the amount of the damage being admitted. Defendant moved for judgment notwithstanding the verdict, or for a new trial. The motion was denied, and this appeal taken.

1. It was apparently the position of the trial court, and the position is insisted on by plaintiff on this appeal, that defendant, though not responsible for the salty condition of the cars furnished by the Great Northern Company to plaintiff, and not negligent, is nevertheless liable as an insurer, and responsible for all damages, there being proof that the potatoes were in good condition when entrusted to its care, and in bad condition on arrival at destination, and the damage not being due to the inherent nature of potatoes to decay. Defendant claims that this proof only makes a *prima facie* case of negligence, which may be rebutted by proof that the damage was not caused by any negligence of the car-

rier, and that in the present case the presumption raised was conclusively rebutted.

Is it the law, as claimed by plaintiff, that a common carrier of perishable freight is an insurer of its delivery at destination in an undamaged condition, and can only escape liability by proving that the damage was caused by the act of God or the public enemy, or that the damage arose out of the inherent nature of the property to decay? Plaintiff insists that this is the common-law rule, and cites Minnesota cases that are claimed to declare it to be the law in this state. 1 Dunnell, Minn. Dig. § 1323, and cases cited; Presley Fruit Co. v. St. Louis, I. M. & S. Ry. Co. 130 Minn. 121, 153 N. W. 115. In contending that these cases or any cases in this state apply the common-law rule that the carrier is an insurer to shipments of perishable freight, we think plaintiff is mistaken. Our reports are replete with cases announcing and applying the rule that proof of no negligence is a good defense in cases of injury to perishable freight, such as fruit and vegetables. Defendant need not prove that the damage was caused by the natural tendency to decay. It is sufficient to prove that it was not caused by its negligence. The rule that proof of injury while in the carrier's possession makes a *prima facie* case of negligence, which may be rebutted, like any other *prima facie* case, by proof that the damage was not caused by negligence of the carrier, has been often distinctly stated by this court. 1 Dunnell, Minn. Dig. § 1333, and cases cited. Dunnell, Minn. Dig. 1916 Supp. § 1333, and cases cited. Some of the cases cited state in so many words that the carrier is not an insurer in the shipment of perishable freight. Brennisen v. Pennsylvania R. Co. 100 Minn. 102, 110 N. W. 362, 10 Ann. Cas. 169; B. Presley Co. v. Illinois Central R. Co. 117 Minn. 399, 136 N. W. 11. All of them proceed on the theory that the liability rests on proof of negligence, and that the *prima facie* case made by showing that the injury occurred while the goods were in the carrier's possession may be rebutted by proof that the carrier was not at fault. We hold that this rule, and not the rule that the carrier is liable as an insurer, applies to the facts in the instant case.

2. Was the presumption rebutted? Does the evidence establish the want of negligence on the part of defendant? There is no doubt that defendant was in no way negligent in furnishing these cars, as it ad-

mittedly had nothing to do with that. They were furnished plaintiff at Mora by the Great Northern Company. That they were in fact unsuitable for shipping potatoes because of the salty bottoms is made plain by the evidence, but was defendant responsible for this condition? Plaintiff makes the claim that defendant is liable because it adopted the cars as its own and used them on its line to continue the shipments. This argument is based on the law that it is the duty of the carrier to furnish proper equipment, and the rule that when a carrier uses the cars of another connecting carrier it is responsible for their condition. If this rule creates a liability in this case, it is a liability not based on negligence, or on any breach of duty, unless it be a nominal one. Plaintiff expected the potatoes to proceed to their destination without unloading. It was impossible to discover the salty condition of the car bottoms. This is plain, both from the direct evidence, and from the fact that plaintiff's employees did not discover their condition either when the potatoes were loaded at Mora, or when they were inspected at St. Paul. We notice a claim that the cars were Burlington cars, but we find no evidence to support such a claim. It is clear, in our opinion, that if defendant is liable for the condition of these cars, it must be on the theory that there is an absolute liability, irrespective of actual negligence or fault, arising from continuing the shipments on defendant's line in the cars in which they arrived at St. Paul. The claim that this is the law is largely based upon the case of Shea v. Chicago, R. I. & Pac. Ry. Co. 66 Minn. 102, 68 N. W. 608. The facts in the Shea case were that the defendant carrier knew that the car was unfit for the shipment of lemons when it received it from the connecting carrier. It was negligent in using such a car. While this is not made prominent in the opinion, and while some expressions therein seem to support a rule of absolute liability, it is nevertheless plain, taking the opinion as a whole, that the liability of defendant is predicated upon its actual negligence in the care of the lemons while in its custody. There is no doubt that it is generally correct to say that it is the duty of a carrier to provide safe and suitable vehicles for the transportation of goods entrusted to its care, and that he is not excused from this duty when the goods are received and carried by him in vehicles furnished by a connecting carrier. He adopts and makes such vehicles his own for the

purpose of conveying the goods. 2 Hutchinson, Carriers, §§ 498-501. The statement of the author in one part of the text that the carrier will be liable for any damage arising from the unfitness of the vehicles for the carriage of the goods should be read in connection with the statement that, if the carrier fails to make reasonable inspection of the vehicles, he will be deemed guilty of such negligence as will render him liable for any resulting loss. It seems to us that the liability of the carrier who continues a shipment received from a connecting carrier in the cars of the latter should rest on negligence, some fault on its part, as its failure to properly inspect the vehicles before continuing the shipment. It will doubtless be true except in rare instances that the unsuitable character of the car is discoverable on inspection, and this was the fact in the Shea case and in all the cases we have found that concern the liability of carriers for failure to furnish suitable cars or accepting from other carriers shipments in cars that are defective. In the case at bar the condition that caused the damage was not discoverable. We have been able to find no case like it among the many decisions. We think that the authorities generally recognize that the liability of the carrier for failure to furnish suitable cars, whether the cars be its own or the cars of a connecting carrier which come to it with their freight, is not an absolute liability, but only results in case of its failure to exercise due care, skill or diligence. 5 Thompson, Negligence, § 6591; Moon v. Northern Pacific R. Co. 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194. See note to Louisville & N. R. Co. v. Church, 130 Am. St. 47, where the authorities are collected. The duty of the carrier is that of properly inspecting the cars of other roads that are received by it for transportation. If this duty is performed, or if the defect is one that a proper inspection will not disclose, there is no liability.

We have not considered it necessary to refer to the language of the Carmack amendment, but will say that it makes a carrier liable for the loss or damage caused by it or by the carrier which continues the transportation. It does not make the carrier liable for damage caused by a prior carrier. We have assumed, without so deciding, that the evidence is sufficient to show that the damage occurred after the cars were received by defendant.

Our conclusion in the case involving the two St. Louis cars is that

there should be judgment for the defendant notwithstanding the verdict.

3. As to the action involving the New Orleans shipment it is conceded that plaintiff made a case for the jury. It is the claim of defendant that there was no competent evidence as to the extent of the damage to the potatoes while they were in transit. The car arrived at New Orleans on Sunday, October 5, and notice of its arrival was given the consignee on the sixth. The consignee refused to receive the potatoes, which were found to be "more or less decayed." They were unloaded from the car and piled upon the unloading platform, where they remained until October 11, when they were inspected by an employee of a commission firm who reported that they were "more or less decayed." The commission man to whom the potatoes were consigned was permitted to give his opinion that the condition of the potatoes on the eleventh was the same as on the sixth, and the extent of the loss was estimated on the basis of their condition at the later date. While the evidence is not very satisfactory, we do not feel justified in saying either that it was error to receive it, or that it is conclusive that part of the loss was caused while the potatoes were on the unloading platform, in defendant's possession as a warehouseman.

The order in the case involving the two St. Louis cars is reversed, and judgment for defendant notwithstanding the verdict ordered.

The order in the case involving the New Orleans shipment is affirmed.