## E. E. HOWE v. GREAT NORTHERN RAILWAY COMPANY AND OTHERS.[1]

December 7, 1928.

No. 26,983.

See note in L. R. A. 1917C, 510; 4 R. C. L. 728; 1 R. C. L. Supp. 1204; 4 R. C. L. Supp. 289; 5 R. C. L. Supp. 254.

*E. L. Tong* and *Samuel Dolf,* for appellant.

*Hoke, Krause & Faegre,* for respondent Great Northern Railway Company.

[1]Reported in 222 N. W. 290.

*R. L. Kennedy, P. J. McGough* and *G. F. Dames,* for respondent Chicago, St. Paul, Minneapolis & Omaha Railway Company.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *E. B. Baer,* for respondent Pennsylvania Railroad Company.

TAYLOR, C.

This is an action to recover damages for the deterioration, while in transit, of a carload of potatoes shipped from Hinckley, Minnesota, to Buffalo, New York. The court found, in substance, that the damaged condition of the potatoes was not caused by any negligence of the defendants and directed judgment in their favor. Plaintiff appealed from an order denying a motion for a new trial.

Plaintiff placed the potatoes in sacks containing 150 pounds each and loaded them into a refrigerator car at Hinckley on May 10, 1926. On the morning of May 11 he delivered them to the Great Northern Railway Company consigned to himself at Minneapolis, Minnesota. They arrived at Minneapolis and were placed on the delivery track late that same day. On May 12 plaintiff reconsigned them to Chicago, Illinois, over the Chicago, St. Paul, Minneapolis & Omaha Railway. They arrived at Chicago and were placed on a delivery track on May 14. In the afternoon of May 17 plaintiff reconsigned them to Pittsburgh, Pennsylvania, over the Pennsylvania railway. They arrived at Pittsburgh and were placed on the delivery track early in the morning of May 20. They remained on that track until the night of May 24. On Saturday, May 22, plaintiff reconsigned them to Buffalo, New York. The order for this reconsignment was sent from Minneapolis by telegraph and reached Pittsburgh too late in the afternoon to be acted upon in the usual course of business before Monday, May 24. The car was sent out in the first train available on May 24 and arrived at Buffalo at 7:30 a. m. on the morning of May 26, 1926. On arrival at Buffalo "said potatoes were found to be in a more or less damaged condition, being sprouted, rooty and decayed, with the sacks having wet spots thereon." They were sold in their damaged condition for the sum of $1,095.75. The foregoing facts appear from the stipulation of facts made by the

parties. They also stipulated that the shipment was made under instructions for "standard ventilation," and that the transportation was made under "standard ventilation" throughout the entire distance. They also stipulated that notice of arrival was promptly given at each of the points to which the car was consigned.

The car did not reach its final destination until 15 days after it started; but the finding that there was no negligent delay on the part of any of the carriers is fully warranted, for there were no delays while the car was being transported from one destination to the next, and the only delays were those for which plaintiff himself was responsible. Although plaintiff in his complaint alleged unreasonable delay in transporting the potatoes, he no longer urges that claim but urges that the presumption arising from the fact that the potatoes were delivered to the carrier in good condition and arrived at destination in a damaged condition has not been overcome and entitles him to recover.

The shipment was made under the uniform straight bill of lading prescribed by the interstate commerce commission. The provision here involved reads:

"Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party entitled to make such request, or resulting from a defect or vice in the property."

Plaintiff insists that where the property is received in a sound condition and is delivered at destination in a damaged condition it is not sufficient for the carrier to show that he was free from negligence but that he must go further and show the cause of the damage. This question was decided adversely to the contention of plaintiff in George B. Higgins & Co. v. C. B. & Q. R. Co. 135 Minn. 402, 405, 161 N. W. 145, L. R. A. 1917C, 507, in which the court said in respect to perishable freight:

"Defendant need not prove that the damage was caused by the natural tendency to decay. It is sufficient to prove that it was not caused by its negligence."

After referring to prior cases the court further said:

"All of them proceed on the theory that the liability rests on proof of negligence, and that the *prima facie* case made by showing that the injury occurred while the goods were in the carrier's possession may be rebutted by proof that the carrier was not at fault."

Later cases are in accord. McNeill & Scott Co. v. G. N. Ry. Co. 156 Minn. 120, 194 N. W. 614; W. A. White Brokerage Co. v. American Ry. Exp. Co. 174 Minn. 377, 219 N. W. 290.

The tendency of potatoes to sprout and decay at the season of the year in which this shipment was made is a matter of common knowledge of which the courts will take judicial notice. The potatoes were sacked and loaded by plaintiff himself. A delay of about a week occasioned by plaintiff's own acts occurred while they were in transit. There was no negligent delay on the part of the carriers. The car was ventilated throughout the entire period of transportation in the manner directed by plaintiff. The only thing suggested as a ground for liability is that the evidence shows the manner in which the sacks were placed and arranged in the car for the purpose of permitting air to circulate about them, and that defendants have failed to show that there was no change in such position which would interfere with the circulation of the air. If any such disarrangement had taken place, it would have been as obvious to plaintiff when he examined and unloaded the car at destination as to the defendants. The fact that he made no such claim, taken in connection with his stipulation in respect to ventilation, justified the court in concluding that there was no foundation for it. The findings are justified by the evidence, and the order is affirmed.