[Civil No. 3839. Filed December 13, 1937.]

[74 Pac. (2d) 38.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. FRED ITULE, Appellee.

Mr. Francis M. Hartman, Messrs. Knapp, Boyle & Thompson and Mr. Guy V. Shoup, of Counsel, for Appellant.

Messrs. Mathews & Bilby and Mr. T. K. Shoenhair, for Appellee.

LOCKWOOD, J.—This is an action by Fred Itule, hereinafter called plaintiff, against Southern Pacific Company, a corporation, hereinafter called defendant, to recover damages for two carloads of tomatoes shipped to plaintiff's assignor from Dania, Florida, to Tucson, Arizona, and to Phoenix, Arizona. The complaint sets up two causes of action which, in substance are as follows:

On or about the 30th of January, 1934, one A. D. Neuman delivered 600 lugs of tomatoes to a common carrier for hire at Dania, Florida, consigned to Frank Itule at Tucson, Arizona. These tomatoes were transported by various carriers to Tucson and delivered to the consignee on or about February 12th, defendant being the delivering carrier. At the time the tomatoes were delivered to the initial carrier, in Florida, they were in good condition, properly packed and loaded, and, if they had arrived in as good condition as when they were delivered for shipment, their reasonable value would have been $1,950. As a matter of fact, however, they arrived in a decayed, ripened, overheated, and spoiled condition, so that their reasonable market value at that time was $298.20. Con-

signee made a claim for damages to defendant, and afterwards assigned said claim to the plaintiff.

The second cause of action was substantially the same, except that it was alleged that the tomatoes were delivered to one Willie Itule, in Phoenix, and that their reasonable value on arrival, instead of being $1,950 (as it would have been had they arrived in good condition), was $789.39. This claim was also assigned to plaintiff. It was alleged that the cause of the damage was negligent transportation of the tomatoes by the various carriers.

Defendant, after pleading a general denial, alleged, in substance, that, when the goods were delivered to the original carrier in Florida, the shipper instructed the carriers to ship the same under what is known as "standard ventilation"; that they were transported in accordance with shipper's instructions at all times, with standard ventilation properly carried out; and that none of the carriers were guilty of any negligence of any kind or description, and that, if the shipments arrived at their destinations in a damaged condition, such condition was caused by the inherent nature of the goods, and not by any negligence on the part of any of the carriers.

The case was tried before a court and a jury, and plaintiff offered evidence tending to prove that the tomatoes were in good condition when delivered in Florida to the initial carrier, and were in an overripe and damaged condition when received at their destinations, together with the reasonable market value, damaged and undamaged, and then rested.

Defendant then offered evidence showing that the goods had been ordered shipped "standard ventilation" and that such ventilation was carried out during all of the period of shipment and, in general, that the shipments were handled and transported carefully and expeditiously, and without delay, except such as

was caused by the orders of the shipper. Plaintiff offered no evidence whatever to contradict or controvert any of this evidence as to the manner in which the shipments were handled. Defendant also showed, by an expert witness, that the shipping of the tomatoes under standard ventilation, instead of protecting them by icing, would tend to cause the condition of the tomatoes on arrival. At the close of the evidence, defendant moved for directed verdicts as to each of the two causes of action, which were denied. There were also certain instructions requested by defendant, which were refused.

The jury brought in a verdict in favor of the plaintiff on the first cause of action for $1,501.80, and on the second cause of action for $1,010.61, upon which verdict judgment was rendered. After the usual motion for new trial was overruled, this appeal was taken.

 The appeal raises a question of law in regard to the extent of the liability of a carrier for perishable articles, such as fruit and vegetables, which has never been determined in this jurisdiction. Under the common law, every carrier receiving goods in good condition for carriage, and delivering them in bad condition, was presumed to have been negligent in their transportation, and was liable for the damages caused by its negligence. There were four, and only four, defenses which might be raised by the carrier under such circumstances, these being that the injury was caused by (a) an act of God, (b) the public enemy, (c) the act of the shipper, or (d) the inherent nature of the goods themselves. It is sometimes said that the basis of the carrier's liability for the loss or damage to goods in transit was presumed negligence, but this, strictly speaking, is erroneous, since it cannot be rebutted. The rule is really one of substantive law, to the effect that the carrier is an insurer of the safe transportation of goods entrusted to

its care, unless the loss or damage is due to one of the four specified causes. *Chesapeake & O. R. Co.* v. *A. F. Thompson Mfg. Co.,* 270 U. S. 416, 46 Sup. Ct. 318, 70 L. Ed. 659; *Memphis & C. R. R. Co.* v. *Reeves,* 10 Wall. (77 U. S.) 176, 19 L. Ed. 909; *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 174, 23 L. Ed. 872. Since these four defenses are affirmative ones, the burden of proof was on the carrier to show that the injury was caused in one of these four manners, and in the absence of affirmative and satisfactory evidence to that effect, following the rule in all cases where the burden of proof is with one or the other party on a given issue, it was the duty of the trial court to instruct the jury that the carrier had not met the burden imposed on it. The older cases are very strict in regard to the necessity of the carrier establishing affirmatively the true cause of the injury, if it desired to escape liability. There was, however, even then, one apparent exception to this rule, and that was when the goods transported were livestock. It was held that, due to the peculiar nature and propensity of animals, the carrier should not be liable for injury thereto, if it had provided suitable means of transportation and exercised the degree of care which the nature of the property required, and had not otherwise contributed to the injury. According to the weight of authority in such cases, therefore, it was generally held that, if the carrier showed that it had provided the proper means of transportation and had exercised that degree of care in transporting the property which its nature requires, it did not need to go further and make a specific showing that the injury was actually caused by one of the four reasons allowed as a defense to the action. 10 C. J., p. 123, and cases cited.

■ ■ We think this apparent exception to the general rule is, in reality, only a recognition of the different *quantum* of evidence required to establish

the same defense under different circumstances. It is a well-known fact that the majority of inanimate objects, when they are delivered to the carrier in good condition, will almost invariably remain in the same state until they reach the consignee at the end of the route, in the absence of some human instrumentality which injures them. Such being the case, it is but reasonable that, in case such objects arrived in a damaged condition, the carrier should prove affirmatively the damage was caused by one of the four things above set forth, since they were the only matters which released it from the obligation of an insurer imposed on it by public policy. For instance, a plate glass mirror, which is in good condition, will remain so indefinitely unless injured by an act of God or some human violence applied thereto directly or indirectly. And, since the carrier is in the exclusive possession of the goods during their carriage it is in the best position of anyone to show affirmatively the real cause of the damage. It is apparent, however, that animate objects, such as livestock, are in an entirely different category. They may be injured, or even killed, by acts arising out of their own inherent nature and unaccompanied by any human agency or negligence. Even with the best of care on the part of all who come in contact with them during the shipment, they often fail to arrive at their destination in good condition. The apparent exception is merely a recognition of this fact, and, if the carrier proves the exercise of due care on its part, the natural presumption is that the damage was caused by the nature of the animals, and not by any human agency.

The extensive shipment of fruit and vegetables for a long distance is a comparatively modern institution, and but few of the earlier cases deal with such shipments. As the business grew, it soon appeared that it was a very frequent thing for such goods to be

shipped in good condition and be delivered in a damaged condition. The question then arose as to the nature of defense which the carrier might make in an action for damages to such goods. It was agreed with practical unanimity that the common-law rule as to the extent of the liability of the carrier prevailed, in the absence of a statute to the contrary, and the federal courts particularly have held that it does in interstate commerce, unless some act of Congress modifies that liability. The matter which was in dispute was whether these goods partook of the nature of ordinary inanimate bodies, and the burden of showing the specific cause of the damage was on the carrier, or whether they were rather of the character of livestock, and it was sufficient for the carrier to show that it had not been guilty of any actual negligence in transportation, without the necessity of proving the specific reason for the injury. The great majority of modern cases take the latter view. *Howe* v. *Great Northern R. Co.,* 176 Minn. 46, 222 N. W. 290; *Cassone* v. *New York etc. R. Co.,* 100 Conn. 262, 123 Atl. 280; *Philadelphia, B. & W. R. Co.* v. *Diffendal,* 109 Md. 494, 72 Atl. 193, 458; *Fean* v. *Alabama Great Southern R. Co.,* 26 Ohio App. 96, 159 N. E. 487; *W. E. Roche Fruit Co.* v. *Northern Pac. R. Co.,* 184 Wash. 695, 52 Pac. (2d) 325. There are a few, however, which apparently hold to the contrary. *Chesapeake & O. R. Co.* v. *Timberlake,* 147 Va. 304, 137 S. E. 507.

 Since this is a matter of first impression in Arizona, we are at liberty to adopt whichever view seems to us the most reasonable. We have read and compared all of the cases cited by both plaintiff and defendant on this issue. It is a notorious fact, of which the courts may well take judicial notice, that all fruits and vegetables of every nature will ultimately decay, although no human agency has approached them after their maturity. The possibility of dam-

ages to this class of goods in shipment, without any negligence on the part of the carrier, is, in our opinion, even greater than that of damage to livestock, for the latter, with proper care, can generally be transported a very long distance and over a long period of time without injury, while even under the best of care, fruits and vegetables, especially those of the nature of tomatoes, will commence deterioration in a comparatively short period, particularly if they are not protected therefrom by some special method of shipment, such as artificial refrigeration. That this is true is recognized by the very extensive use of specially built refrigerated cars for this class of goods. We think the fairer and more logical rule is that in cases of the shipment of perishable fruits and vegetables, when the carrier shows affirmatively that it handled them in the method requested by the shipper, and that it exercised reasonable care to prevent any damage from any cause not necessarily involved in the method of transportation so chosen, that it has satisfied the requirements of the law in regard to the *quantum* of proof required to establish a defense to the action.

Let us apply this rule to the present case. The plaintiff offered evidence that the goods were shipped in good condition, and that when they were received they were partially decayed. This, of course, was sufficient to sustain the burden of making a *prima facie* case. The defendant then showed conclusively that it was at the request of the shipper that the goods were sent "standard ventilation," and that such phrase means that they shall not be subject to artificial refrigeration. It also proved, by the testimony of uncontradicted witnesses, covering substantially every foot of the distance from Florida to Tucson and Phoenix, that the Interstate Commerce Commission rules in regard to standard ventilation were strictly com-

plied with at all stages of the journey, and the temperature as it was when the tomatoes were shipped, and at various places along the route. It was also shown by a qualified expert that tomatoes shipped at the temperature which the undisputed evidence shows existed in Florida at the time the shipment started, and not precooled, would ripen very rapidly. We think that the evidence on behalf of the defendant which, as we have said, was uncontradicted by the plaintiff, was sufficient to justify the conclusion that the carriers used every reasonable care required of them under the conditions of the shipment, and that they were not guilty of negligence in any manner in handling it. It was therefore necessary when the case was submitted to the jury that they be properly instructed as to what was necessary for the defendant carrier to prove in order to sustain its defense. The court gave the following instruction:

" . . . I instruct you, therefore, as a matter of law, that if you believe from a preponderance of the evidence that said shipments alleged in plaintiff's complaint, or either of them, were delivered to the carrier at Dania, Florida, in good condition, and after being transported across the country were delivered by the defendant, Southern Pacific Company, to the consignees in Arizona in bad or damaged condition, that then and in such event the burden would be upon the defendant, Southern Pacific Company, to prove by a preponderance of the evidence that such damage or injury that had been sustained by such shipments, if any, was the result of some inherent defect in the shipment, or was caused by the negligence of the shipper, or by some other cause over which the railroad companies that transported the shipments had no control. If the defendant Southern Pacific Company fails to sustain by a preponderance of the evidence this burden which is imposed upon it by law, it will be your duty to find for the plaintiff and against the defendant on both his first and second causes of action."

It is, in effect, an instruction that it was incumbent upon the defendant to satisfy the jury by a preponderance of the evidence that the damage to the tomatoes was, in fact, caused by one of the three reasons set forth in the instruction, and that, unless it did so, the jury must return a verdict for the plaintiff. This instruction was fatally erroneous, for, as we have pointed out, the law merely requires, in cases like the present, that the defendant carrier satisfy the jury that it handled the tomatoes in accordance with the instructions given by the shipper, and in a reasonably prudent manner as to all matters not covered by such instructions.

The judgment of the superior court of Pima county is reversed, and the case remanded, with instructions to grant a new trial in accordance with the opinion expressed herein.

McALISTER, C. J., and ROSS, J., concur.