C. W. FRYE, d/b/a FRYE'S KENNELS, Plaintiff-in-Error, v. RAILWAY EXPRESS AGENCY, Inc., Defendant-in-Error. —296 S.W. (2d) 362.

Western Section. June 8, 1955.

Petition for Certiorari denied by Supreme Court October 7, 1955.

430

Ross & Ross, Savannah, for plaintiff in error.

W. W. Lackey, Savannah, for defendant in error.

CARNEY, J.  Plaintiff below, C. W. Frye, d/b/a Frye's Kennels, filed suit before a Justice of the Peace of McNairy County against the defendant Railway Express Agency, Inc., for breach of contract for failure to deliver a blue tick male coon hound valued at $200.  The dog was lost in route from Henderson, Tennessee, to Rochester, New York.

The case was appealed to the Circuit Court where a jury verdict of $200 in favor of the plaintiff was set aside by the Trial Judge upon defendant's motion for a new trial, the Trial Judge being of the opinion that the evidence was insufficient to make out a case for the jury.

The plaintiff has been a handler and seller of coon dogs for some thirty-two years and regularly conducted his business at Finger, Tennessee, in McNairy County but the particular dog in question was shipped from Henderson, Tennessee, in Chester County on September 4, 1951, after the Agency closed its office in Finger, Tennessee.

The dog was shipped in a wooden crate made of ⅝" rough poplar lumber.  The crate was approximately three feet long, two feet high, 15 inches wide and the top and bottom boards were six inches wide.

The route of shipment of the dog from Henderson, Tennessee, to Rochester, New York, was by way of a train from Chicago, Illinois, to Buffalo, New York.

The circumstances surrounding the loss of the dog are to be found in the testimony of Mr. M. R. Large who gave deposition by interrogatory. Mr. Large was employed by the defendant Railway Express Agency, Inc., and was express messenger on the train which ran from Chicago, Illinois, to Buffalo, New York. There were other dogs and possibly other live animals being shipped on the same train.

With reference to Mr. Large's duties as an employee of the defendant, we quote from his deposition as follows:

"Int. 3  What was the nature of your job at that time, giving your general duties:

"Express Messenger.

"Duties. — Handling and protecting mdse., valuables, and live stock enrout Chicago, Ill. to Buffalo, N. Y. via New York Central railroad trains No. 32 and No. 43.

"Int. 4  In the course of your duties, were you in charge of certain Railway Express shipments aboard a train which arrived in Buffalo, New York, on or about the afternoon of September 6, 1951; "Yes

"Int. 5  What are your duties generally with respect to handling shipments of crated live animals?

"Feeding, watering, and following any shipper's instructions which might accompany shipment, letting dogs out of crates (equipped with doors) and into car, for digestive relief and exercise, of course, this only when the dog appears friendly, and needless to say with all car doors closed."

The merchandise and/or animals under the supervision of Mr. Large were in two connecting express cars.

Mr. Large saw and examined the crate periodically from Chicago to Buffalo and the dog was watered and fed at Cleveland, Ohio, some four hours out of Buffalo. The crate was not equipped with a hinged door or gate.

About one hour before arrival in Buffalo, Mr. Large noticed the dog and that the crate was in good shape and showed no evidence of attempted escape. Mr. Large did notice that the dog appeared to be nervous and was barking and Mr. Large testified that in his opinion the dog was in considerable misery and discomfort for lack of digestive relief. He further testified that there were no signs in the crate that the dog had had any relief since the beginning of his trip.

Upon arrival in Buffalo, Mr. Large opened the door to one of the express cars to permit terminal employees to load and unload shipments to and from the car. While the car was being worked, someone called Mr. Large's attention to the fact that the dog had jumped from the car door and was well on the way to escape. Mr. Large and other employees made hot pursuit both by automobile and on foot but were unable to catch the dog. Advertisements in the paper were likewise unsuccessful and the dog had not been located at the time of the trial.

Mr. Large further testified that examination of the crate showed that the dog had chewed or gnawed the bottom board in two and made his escape and that this was not an unusual occurrence with animals suffering from digestive misery.

In rebuttal, plaintiff Frye testified that in his opinion the dog could not have gnawed out of the new wood crate in which he had been shipped and that in his thirty-two years' experience he had never heard of such a case. He further testified that he had shipped many, many dogs across the country in crates similar to the one in question without hinged doors or gates and that all dogs except those housebroken would take digestive relief within the crate. This dog was not housebroken, but he was a tame dog.

The shipment of this dog was made under a special livestock contract which is filed of record in the cause. Section 5 of said contract is as follows:

"Section 5. The Shipper agrees that the Express Company shall not be liable for the conduct or acts of the animals to themselves, or to each other, such as biting, kicking, goring or smothering, nor for loss or damage arising from the condition of the animals themselves, or which results from their nature or propensities, which risks are assumed by the Shipper. The Shipper hereby release and discharges the Express Company from all liability for delay, injuries to or loss of said animals and paraphernalia, from any cause whatever, unless such delay, injury or loss shall be caused by the Express Company or by the negligence of its agent or employees, and in such event the Express Company shall be liable only to the extent of actual damage sustained, but in no

event to an amount for an animal or paraphernalia in excess of its value as declared above."

Section 8 of said contract is as follows:

"Section 8. The Shipper agrees that as a condition precedent to recovery hereunder for loss or injury or damage to or delay in delivery of this shipment, such loss, injury, damage or delay shall be proved by the Shipper to have been caused by negligence of the carrier, and in consideration of the free carriage of a person or persons as his agent or agents in charge of said animals where permitted under the Official Express Classification in effect on date of shipment to indemnify and save harmless the Express Company from all claims, liability and demands of every kind, nature and description by reason of personal injuries sustained by said person or persons so in charge of said animals whether the same be caused by negligence or otherwise."

In the case of Illinois Central Railroad Co. v. H. Rouw & Co., 25 Tenn. App. 475, 159 S. W. (2d) 839, 841, Judge Anderson reviews a number of Tennessee cases involving public carriers. While that case involved damage to a carload of strawberries, yet the opinion of Judge Anderson adjudged that it was analogous to cases involving loss or damage to livestock in the hands of a carrier for transportation. From the opinion, we quote as follows:

"(5) We think a case of the kind indicated is assimilable to a case involving loss or damage to livestock in the hands of a carrier for transportation. In such case the mere factum of the loss or damage does not fix absolutely the liability of the carrier but simply operates to impose upon it the necessity of

showing that the loss or damage did not result from its negligence and this may be done by proof that the shipment was handled in such a manner as to warrant the conclusion that the requirement of ordinary care had been met, without further proof that such loss or damage was due to the peculiar propensities of the animal. Railway Co. v. Wynn, 88 Tenn. 320, 332, 14 S. W. 311. The weight of authority we think supports the view that this rule is also applicable in the handling of perishable property. Railroad Co. v. Naive, supra [112 Tenn. 239, 79 S. W. 124, 64 L. R. A. 443]; Southern Pac. Co. v. Itule, 51 Ariz. 25, 74 P. (2d) 38, 115 A. L. R. 1268, and cases cited in the note thereto; Howe v. Great Northern Railroad Co., 176 Minn. 46, 222 N. W. 290; Higgins & Co. v. Chicago, B. & Q. R. Co., 135 Minn. 402, 161 N. W. 145, L. R. A. 1917C, 507; Railway Express Agency v. H. Rouw & Co., 198 Ark. 423, 128 S. W. (2d) 989; Railway Express Agency v. H. Rouw & Co., 197 Ark. 1142, 127 S. W. (2d) 251.

"The case of Railway Co. v. Wynn, supra, was an action to recover the value of a mare entrusted to the carrier for transportation from Gallatin, Tennessee, to Lexington, Kentucky. The animal died before reaching her destination. The trial judge charged the jury that if the mare was shown to have been in good condition when delivered to the carrier it was encumbent on the latter to show that her death was not caused by negligence. With respect to this the Court, after pointing out that the strict common-law rule of liability of a carrier of goods had been relaxed 'so that the carrier may exonerate itself from responsibility by either showing that the case falls

within one of the exceptions of the common law, or within one of the stipulations of the special contract' (88 Tenn. 320, 14 S. W. 314) and holding that the instruction given by the trial judge was correct as far as it went, said: 'But his honor should have gone further in this case, and told the jury that the mere fact that the mare was found to be dead on reaching her destination did not absolutely fix the liability of the carrier, but simply devolved upon it the necessity of showing that the death did not result from its fault or negligence, which it might do by proof that its cars were in good and safe condition; that the transportation was made with all proper care; and that there were no bruises or signs of injury upon the dead body, or indications that death followed from other than natural causes.'

"(6) This we construe as a recognition of the fact that the carrier may exonerate itself from the imputation of negligence resulting from the plaintiff's prima facie case by showing that the shipment had been handled with ordinary care.

"The logic that supports this rule with respect to the carrier's responsibility in the case of a shipment of livestock applies with equal force in the transportation of perishable commodities. See Southern Pac. Co. v. Itule, supra."

Thus the question presented by this appeal is whether there was any material evidence upon which the jury could have found the defendant guilty of proximate negligence and therefore liable to the plaintiff for the loss of the dog.

The defendant insists that the testimony of Mr. Large that the dog chewed out of the crate is conclusive. Fur-

ther, it insists that having proven that the animal escaped by chewing out of the crate, that the loss was occasioned from the nature or propensity of the animal and therefore the company is not liable under provisions of sec. 5 quoted above.

Assuming that the dog did chew his way out of the crate, does it follow that all reasonable men must agree and come to the conclusion that this was the proximate cause of the loss of the animal and that the defendant was guilty of no proximate negligence? We think not.

The Express Agency accepted the dog for shipment covering several days in a crate without hinged gate or door. The crate was new, contained no defects and was of the type customarily used by the shipper and accepted by the carrier. The dog was placed in an express car along with other live animals. One hour before arrival in Buffalo, defendant's employee noticed that the dog was in misery, nervous and barking. The same agent, Large, was a lover of dogs and was in charge of the two connecting express cars containing the dogs and other animals. He was a long-time employee and seemingly had had considerable experience in handling dogs and other animals in transportation. He knew the propensity of caged or crated animals to try to escape. In fact, he said in his deposition, "From my experience after many years of livestock handling, a dog will attempt to get from his crate most vigorously when he requires digestive relief."

When the train pulled into the terminal at Buffalo, this same employee opened the door to one of the cars, so far as the record shows, without making any check or examination of the various animals to see if any of them

were out of his or her crate and thus more likely to escape through the open door. Certainly, he made no observation or inspection of the crate containing the coon hound or he would have observed the gnawing on the board and observed that the dog was out of the crate or about to get out of the crate. He knew from experience that dogs in the misery such as the coon hound were likely to attempt vigorously to escape.

In his deposition Mr. Large says that his attention was called to the fact that the dog was escaping through the door. From this statement we think the jury could infer either that he was not actually in the car at the time of the escape by the dog or that he was not watching the door or the dog at the time of the escape.

■■ The defendant carrier owed a duty of ordinary care to see that the dog did not escape from its cars in shipment. In our opinion there was material evidence from which the jury could have found that the defendant's employee, Large, and others were negligent in opening the door of the express car at the terminal without proper caution to prevent the coon hound from escaping.

Therefore, we hold that His Honor was in error in directing a verdict in favor of the defendant. The judgment of the lower Court is respectfully reversed and the cause remanded for a new trial. The defendant, Railway Express Agency, Inc., is taxed with the costs of this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.