TRAUTMANN BROS. CO., Inc., Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, Appellee.

No. 19813.

United States Court of Appeals Fifth Circuit.

Dec. 27, 1962.

---

Margaret B. Brown, Howell Ward, Ward & Brown, Corpus Christi, Tex., for appellant.

Leslie S. Lockett, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Circuit Judge.

The appellant filed this suit to recover for damages to six cars of honeydew melons, transported by defendant from Laredo, Texas, to Philadelphia, Pennsylvania. After trial without a jury, the judge held that the defendant was not liable, except for a small part of the damages.[1]

At Laredo, the melons were loaded into the cars and iced, under plaintiff's directions, and one Fillpot, an employee of the plaintiff, then pre-cooled the cars with electric fans. The cars did not come under the control of the defendant railroad until Fillpot had completed his pre-cooling operations. The plaintiff offered the testimony of witnesses, who had grown and harvested the melons, that the melons were in good condition when they reached the cars at Laredo; and the testimony of another of plaintiff's witnesses, who had been employed to supply gas to the melons after loading, was to the same effect. The defendant did not replenish the ice bunkers at Laredo but waited until San Antonio was reached so that there was a lapse of about twenty-four hours before the cars were re-iced. The cars reached Palestine, Texas, on the following day, where defendant maintains an icing station, which, as to this particular train, was for emergency purposes only, but the cars were not re-iced there. The ice bunkers were refilled when the cars reached Texarkana. When the melons were unloaded in Philadelphia, many of them were found to be overripe and spoiled.

The trial judge found that the temperature in the cars was from forty-five

---

1. As to two cars of the melons, the parties agreed to a settlement, and separate judgment was entered. The judge found that the damages to the four other cars amounted to $1,920.67, of which, however, the defendant was liable for only $90.64.

to fifty degrees upon arrival in Philadelphia; and, as the railroad had re-iced the cars at all of the regular stations, that the temperature had probably been kept at the same level throughout the trip, there being no evidence to the contrary. He also found that the ice bunkers were not full when the cars left Laredo, because the cooling fans used by Fillpot had caused the ice to melt much more rapidly than usual; however, as the defendant had no knowledge of these special cooling operations, it was under no duty to re-ice at Laredo. Further, the judge found that the melons were prone to spoilage, on the basis of the following facts: (1) raising such melons in Laredo was a new venture in 1957, when this shipment was made, and was not continued; and (2) forty-nine claims for decay and overripeness had arisen from the fifty-two shipments of Laredo melons.

We deal first with appellant's contention that the trial court erred in holding that the defendant was not an insurer. The district judge was correct. A common carrier is not absolutely liable for spoilage or physical deterioration during the course of shipment.[2] So long as the carrier has discharged its duty of reasonable care, it is not liable for "damage to a shipment caused * * * by the operation of natural laws upon it * * *;"[3] that is, the carrier is not liable for damages occasioned solely by the inherent nature, or vice, of the goods themselves. Nor is the carrier liable for damages caused solely by the acts or directions of the shipper.[4]

The contract between the parties in this case does not render those general rules inapplicable. The bill of lading under which the melons were shipped provided that the carrier received the shipment "subject to the classifications and tariffs." Two such tariff provisions were Rules 130 and 135 of Perishable Protective Tariff No. 17.[5] These rules serve, as we have observed previously, to "limit the liability of a carrier transporting perishable goods to liability for negligent failure reasonably to carry out instructions given by the shipper."[6] Nothing in Section 20(11) of the Transportation Act, 49 U.S.C. § 20(11), precludes a carrier's limiting its liability in that manner, notwithstanding appellant's contention to the contrary. The section provides simply that a carrier cannot limit its liability for damages *caused by the carrier.*

2. See, e.g., Atlantic Coast Line R. Co. v. Georgia Packing Co., 5th Cir., 1947, 164 F.2d 1; Southern Pacific Co. v. Itule, Ariz.1937, 51 Ariz. 25, 74 P.2d 38, 115 A.L.R. 1268; Texas & Pac. Ry. Co. v. Empacadora De Ciudad Juarez, Tex.Civ. App.1958, 309 S.W.2d 926, 936–937 (on motion for rehearing), writ refused, n.r.e.

There is an obvious distinction between damage of that type and damages resulting from crate breakage or physical breakage. See Yeckes-Eichenbaum, Inc. v. Texas Mexican Ry. Co., 5th Cir., 1959, 263 F.2d 791.

3. Austin v. Seaboard Air Line R. Co., 5th Cir., 1951, 188 F.2d 239, 240. See 9 Am. Jr., Carriers, Sec. 725 (1937).

4. Austin v. Seaboard Air Line R. Co., supra, note 4. See 9 Am.Jr., Carriers, Sec. 728 (1937).

5. Rule 130 provides: *"Conditions of perishable goods not guaranteed by carriers.*—Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

Rule 135 provides: *"Liability of Carriers.* Property accepted for shipment under the terms and conditions of this tariff will be received and transported subject to such directions, only, and to such election by the shipper respecting the character and incidents of the protective service as are provided for herein. The duty of the carriers is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

6. Atlantic Coast Line R. Co. v. Georgia Packing Co., supra, note 2.

Fact issues were therefore raised by the evidence.

 Conceding, as appellant contends, that once it introduced evidence showing that the melons were in good condition when delivered to defendant but were spoiled upon arrival at their destination, it had established a *prima facie* case of liability of the appellee, so that the burden shifted to the appellee, we are of the opinion that the appellee carried that burden. Even if it is true, as appellant contends, that the district court's finding of inherent vice was based upon improper inferences from general conditions at Laredo, the evidence is nevertheless ample to support the judge's additional finding that the defendant was not negligent and hence did not contribute to the spoilage. The evidence shows that the train was re-iced at the regular stations; and appellee, being without knowledge of the pre-cooling operations, was under no duty to re-ice at Laredo.

We have considered all of appellant's arguments and none of them, in our opinion, warrants reversal. The judgment is accordingly

Affirmed.