342 TENNESSEE REPORTS, [141 Tenn.

West Const. Co. v. Seaboard Air Line Ry. Co.

WEST CONST. CO. *v.* SEABOARD AIR LINE RY. CO.

(*Knoxville.* September Term, 1918.)

1. **CARRIERS. Carriage of freight. Injury. Damages. Overhead expenses.**

   In an action against a carrier for damage to an asphalt plant transported by it and wrecked in transit, no recovery could be had for overhead expenses due to the enforced idleness of plaintiff's workmen, such item of damages not being in contemplation of the parties. (*Post, pp.* 344-346.)

2. **CARRIERS. Action for damage to goods. Interest on amount of recovery.**

   In an action against a carrier for damages to an asphalt plant in transit, it was within the discretion of the chancellor to allow interest on cost of repairs paid by complainant, rceovery of which was sought from carrier. (*Post, pp.* 344-346.)

3. **CARRIERS. Carriage of freight. Contract as to rate. Validity.**

   Where a railroad company inspects and classifies as pitch material which is claimed to be asphaltum, and enters into a contract with a shipper to transport it for a given sum, the contract is binding, notwithstanding that the rate charged is less than the authorized tariff rate, in the absence of a showing of mistake. (*Post, pp.* 346, 347.)

4. **CARRIERS. Carriage of goods. Contract for transportation. Waiver.**

   Where a shipper under protest pays a higher rate than called for by the contract under which material is shipped, in order to obtain the material which he needed, such payment is not a waiver of the contract. (*Post, pp.* 346, 347.)

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County.—Hon. W. B. GARVIN, Chancellor.

WILLIAMS & LANCASTER, for West Const. Co.

BROWN, SPURLOCK & BROWN, for Seaboard Air Line Ry. Co.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a damage suit. The complainant delivered its asphalt plant to the defendant at Bartow, Fla., to be transported to Chattanooga, Tenn. The car in which said plant was loaded was wrecked in transit, and the plant was badly damaged.

The damage was repaired at a cost of $1,358.30, which was paid by the complainant. The defendant declined to reimburse the complaint, and suit was brought to recover same, with interest.

On account of this injury complainant was deprived of the use of said plant for thirty-seven days, during which time complainant's force, used in operating said plant, remained idle, and on this account complainant also seeks to recover, as damages, the sum of $1,800, as overhead expenses.

The chancellor decreed in favor of the complainant for the $1,358.30, with interest, but held that the complainant was not entitled to recover the $1,800, but did hold that it was entitled to recover the reasonable rental value of said plant for the thirty-seven days that it was deprived of the use of same, and referred the matter to the master for the purpose of having said rent ascertained.

The defendant filed a cross-bill, in which it undertook to recover $32.97 rent, unpaid freight charges amounting to $713.25, and $13 demurrage, aggregating $759.22.

The defendant to the cross-bill answered, admitting the indebtedness set forth in the cross-bill, and by way of cross-bill to the cross-bill set up a claim of $40 for loss on stone in transportation, and $769.08 overcharges made by the defendant on pitch shipped over defendant's railroad from Tampa to Bartow.

The chancellor disallowed the claim of $40, but allowed the freight overcharge of $769.08.

The item of $40 is not insisted on by complainant, and complainant only assigns one error, which goes to the action of the chancellor in fixing the measure of special damages.

The proof shows that when this plant was delivered to the railroad for transportation at Bartow, Fla., its agent was notified that the complainant had a large contract in Chattanooga awaiting execution, and that it was necessary to transport said plant with all speed possible.

We do not think the item of damages, as claimed by the complainant, can be sustained, for the reason that same was not within the contemplation of the parties. The defendant was not advised that the delay in transporting this plant would result in a serious loss by virtue of said overhead expenses, and this assignment of error is disallowed.

The first assignment of error made by the cross-complainant is to the action of the chancellor in allowing interest on the $1,358.30 item. Complainant was not entitled to interest as a matter of law, but it was discretionary with the chancellor as to allowing interest, and in this instance we do not think there was any abuse of such discretion.

The second and third assignments of error go to the action of the chancellor in allowing $768.88 overcharges.

This was not erroneous. The record discloses that the rate on asphaltum from Tampa to Bartow was eight cents per hundred pounds more than it was on pitch. The material came from Pitch Lake in the Island of Trinidad. Upon its arrival in Tampa, Mr. Redmon, treasurer of the complainant company, went to the defendant's manager of inspection and classification, and had him to classify this material and make a rate on same, and thereupon, same was classified and billed as pitch. When this material arrived in Bartow, the local agent of the defendant railway company demanded eight cents per hundred pounds more than the railway company had contracted to transport said material for, and complainant, being badly in need of this material, paid this advanced rate, amounting to $768.88, paying same, however, under protest. It seems that the matter was then brought before the Railroad Commission in Florida, but there is no valid proof showing its finding. It appears that the complainant did not undertake to collect this sum from the railroad company. Neither did the railroad company undertake to collect from the complainant the items for rent, freight charges, and demurrage amounting to $759.22, the parties having, in effect, treated one as an offset of the other, and neither of these claims were attempted to be enforced until this suit was instituted to recover damages sustained by the complainant on account of the injury to its asphalt plant. The complainant has not shown clearly whether this material was asphaltum or pitch. No proof was introduced by the defendant. It does appear, however, that the rail-

road company, through its inspector and classifier, classified this material as pitch, and entered into a contract with complainant by which it agreed to transport same to Bartow for a given sum.

We think this was a binding contract, and the only way that the defendant could avoid the binding effect of said contract would be to show that by mistake it agreed to transport said material for eight cents per hundred pounds less than the tariff rate, and this it has not done. The fact that the complainant paid this high rate upon the material reaching Bartow does not change the result, since it appears that the complainant was very badly in need of this material, and in order to procure same paid this excessive charge, but under protest. We think the complainant pursued a wise course in this matter, and its action in obtaining this material as it did, so as to enable it to complete its contract in Bartow, was in no wise a waiver of its right to insist on the contract, and we cannot see that the defendant's rights were in any wise prejudiced thereby.

In 6 Cyc., at page 498, it is said:

"If freight in excess of the amount contracted for, or a reasonable rate, in the absence of contract, is demanded, either as a condition precedent to accepting the goods for transportation or to their delivery at the end of the transportation, the consignor or the consignee, as the case may be, may pay under protest and bring action to recover back the excess."

And again, in 30 Cyc., at page 1308, it is said:

"Where a person unlawfully demanding a payment is in a position to seize or detain the goods or other personal property of a person against whom the claim

is made, without a resort to judicial proceedings in which the parties may contest the validity of the claim, payment under protest to recover or retain the property will be considered as made under compulsion, and the money can be recovered back, at least where a failure to get or retain immediate possession and control of the property would be attended with serious loss or great inconvenience.''

Numerous authorities are cited in support of the two foregoing texts. If, as a matter of fact, the defendant had contracted to transport this material for a lower rate than that fixed by the tariff, it could have very easily shown that fact.

We find no error in the decree of the chancellor, and same is affirmed, and the cause is remanded for further proceedings.