14

## JOHNSON v. McCORD.—251 S. W. (2d) 144.

Western Division at Jackson.   February 6, 1952.

Writ denied by Supreme Court, June 7, 1952.

Dee McNeil, of Hickman, and Miles & Miles, of Union City, for plaintiff-in-error.

Heathcock & Elam, of Union City, for defendant-in-error.

SWEPSTON, J. The only question raised by the one assignment of error on this appeal-in-error is whether it affirmatively appears from a review of the entire record that the misconduct of the two jurors affected the verdict or results of the trial?

Unless it so appears, there may be no reversal in view of Chapter 32, Acts of 1911, Code Section 10654.

Miss Frances Johnson sued Homer O. McCord for damages for personal injury and damages to her automobile arising out of a collision between her car and that of McCord, who filed a cross-declaration against her for like damages.

Each alleged that the other was driving to the left of the center of the highway as they approached one another from opposite directions and up to the point of impact.

The jury returned a verdict in favor of McCord for $1,000.

■ In support of Miss Johnson's motion for a new trial on the ground of alleged misconduct of the jury it was made to appear without dispute that two jurors, Kerr and Kirkland, had driven out to the scene of the collision during the noon hour recess of a one day trial.

There is no intimation of conscious or venal misconduct on the part of either of these two jurors, who are reputable men, nor for that matter on the part of any of the jurors.

Mr. Kerr testified that he drove out there to get a view of the location; that he hardly knows why because he has frequently driven along there, probably three to five times a week and is familiar with it; that he did

not stop, made no measurements by speedometer or otherwise; denied that his main reason was to locate exactly a bridge with reference to its distance from the place of collision; that what he did observe was substantially portrayed by the photographs in evidence and that he observed nothing that was not fully disclosed by the evidence; he did not know whether during the deliberations of the jury any one of them said anything about being out there during the noon hour, but some one made the statement about having been there recently.

Mr. Kirkland testified he drove out there during the noon hour, just turned around and came back to town; that he was familiar with the scene, having been along there a thousand times, but he was under the impression the photographs were a little misleading, so he wanted to ''get it clear in mind as to the rise and the length of the bridge and the distance the bridge was away from the crest of that hill''; that he found the photographs to be fairly accurate except that they did not show the degree of rise, or grade; that he made no observations there that were not fully brought out by the evidence; he denied the ''position'' of the bridge was one of the main points of the lawsuit; that he did not discuss the trip with anybody in the trial.

Some of the other jurors testified that their impression was that Mr. Kirkland stated to the other jurors that he had been out there at the noon hour; others thought somebody mentioned having been out there; but nobody said that anybody who had been out there during the noon hour said anything about what he observed.

Six of the jurors were familiar with the location and some of them said his familiarity with same entered into his consideration of the case.

Counsel for appellant concedes that each, juror attempted to try the case according to the law and the evidence to the best of his knowledge.

From the foregoing it is obvious that the misconduct of the two jurors had no effect on the other jurors that could amount to reversible error, because they were not informed of what, if anything, the two observed.

Irvine v. State, 1899, 104 Tenn. 132, 142 56 S. W. 845, wherein one juror stated to the others that if they all knew something he knew, they would vote for acquittal, but he did not state what he knew. Held (before the Act of 1911) not sufficient to vitiate the verdict.

As to the conduct of the two jurors, however, appellant urges that from such highly improper conduct prejudice will be presumed, citing Robilio . v. Webb, 7 Tenn Civ. App. 127.

This case and a like statement of the rule, though not applied, in McAlester v. Monteverde, 22 Tenn. App. 14, 115 S. W. (2d) 257, followed Street R. R. & Teleg. Co. v. Simmons, 107 Tenn. 392, 64 S. W. 705, but this case stated the rule as it was prior to the Act of 1911; the rule now is that ''probabilities and tendencies of errors in the trial below are not to be considered grounds for reversal''.

It must affirmatively appear from an examination of the entire record that the error affected the result of the trial. Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461; D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897; Hime v. Sullivan, 188 Tenn. 605, 221 S. W. (2d) 893; Meegal v. Memphis St. Rwy. Co., 33 Tenn. App. 247, 238 S. W. (2d) 519, 20 A. L. R. (2d) 286.

The accident occurred about 1:00 p. m. January 10, 1951 while it was raining, on Highway No. 5 between Hick-

man, Kentucky and Union City, Tennessee, where Highway No. 22 comes into No. 5 from the west. From this intersection No. 5 is somewhat of a parabolic curve both north and south of the intersection for forty or fifty feet until it becomes a straightaway northeast towards Hickman and southeast towards Union City.

Approaching from either direction it is upgrade to the intersection and vehicles coming from opposite directions are not visible to one another until near the intersection. Coming from Hickman there is a bridge 597 feet from the upper side of the fan shaped intersection where Highway 22 comes in from the west.

The theory and evidence of plaintiff is that coming from Hickman she had overtaken and passed the car of one Edwards near this bridge and had pulled back to the right side of the road before she came to the yellow warning line which begins some 150 feet from the bridge and goes up more than 400 feet to the intersection; that as she reached the brow of the hill she saw defendant's car 40 to 50 feet south of the intersection and on her side of the road and he appeared to be about to turn west into Highway 22 to his left; that he was not going fast but the front of his car was weaving and she tried to dodge him, but the collision took place on her side of the road and they ended up over on his side with his car on the shoulder headed in the direction he had been traveling and with her car across his side of the road with the front a few feet from the left side of his car.

She was corroborated by the testimony of the above mentioned Edwards and by one James Jones.

The latter was severely impeached.

Edwards was impeached by the testimony of highway patrolman Stiers, who investigated the accident shortly afterwards and who said Edwards told him at the time

that the lady had passed him and was trying to get back on her side of the road.

The defendant and cross-plaintiff's theory and evidence is that he was on his side of the highway at all times and that the collision occurred on his side; that he had no intention of turning to the left into Highway No. 22, because he lives further up No. 5 and off to the east a half mile and was on his way to help some of his family move.

He was not corroborated by an eyewitness, but the evidence was undisputed that the vehicles were not moved before the patrolman, Stiers arrived and he testified without contradiction that there was glass and other debris on cross-plaintiff's side of the road in front of plaintiff Johnson's car and none on the other side.

It seems to us that the jury was unable to accept plaintiff's evidence that the collision took place on her side of the road because there was no debris on that side. The jury had to accept one or the other's theory, because the two cannot be reconciled.

Hence, we are of opinion that the record not only fails to show affirmatively that the misconduct of the two jurors affected the trial, but shows affirmatively to the contrary.

The assignment is therefore overruled and judgment will be entered here against Miss Johnson for $1,000 with interest from July 4, 1951 and costs of appeal.

Anderson, P. J., and Murchison, Special Judge, concur.