INTER-CITY TRUCKING COMPANY v. MASON &
DIXON LINES, Inc.—276 S. W. (2d) 488.

Eastern Section. November 16, 1954.

Rehearing denied January 7, 1955.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

452

Cunningham & Crutchfield, of Chattanooga, for plaintiff in error.

Buchanan & Grant, of Chattanooga, for defendant in error.

HOWARD, J. This suit was filed by the plaintiff, Mason & Dixon Lines, Inc., a common carrier, for itself and for the use and benefit of the St. Paul Fire & Marine Insurance Co., of St. Paul, Minnesota, against the defendant, Inter-City Trucking Company, also a common carrier, to recover for the value of merchandise lost in shipment between Adamsville, Tennessee, and Easton, Pennsylvania, for which the plaintiff had paid the consignee, Seamprufe Inc., a Pennsylvania concern. The lost merchandise, described as being one carton containing 60 dozen rayon slips of underwear, of the total value of $1,389.60, was shipped by the consignor, Adamsville Underwear Corporation, of Adamsville, Tennessee, to the above consignee on Nov. 21, 1947. Both of the named carriers are Tennessee Corporations, the defendant operating between Adamsville and Chattanooga, Tennessee,

and the plaintiff between Chattanooga and Easton, Pennsylvania. Of the original shipment consisting of 5 cartons, only 4 reached the consignee, and upon demand the plaintiff paid the consignee the value of the lost carton. Both carriers maintain freight houses in the City of Chattanooga. These houses are located in the same block with a yard several feet wide between their loading platforms, the yard being used jointly by the trucks of both parties.

Plaintiff's declaration alleges in substance that the plaintiff and the defendant, operating under the authority of the Interstate Commerce Act, had entered into a uniform bill of lading contract for the transportation of interstate shipments; that specifically on or about the 21st day of November, 1947, the consignor, Adamsville Underwear Corporation, delivered 5 cartons of underwear to the defendant to be transported to Chattanooga, Tennessee, and there delivered to the plaintiff for further transportation to the consignee, Seamprufe, Inc., at Easton, Pennsylvania; that the defendant received the 5 cartons from the consignor but delivered only 4 to the plaintiff; that the consignee held the plaintiff responsible for the loss of the merchandise for which the plaintiff paid the consignee full value, and that the defendant had refused to either deliver the lost carton or pay plaintiff therefor; that ''by reason of the loss of said freight by the defendant while said freight was in its possession and control before it was delivered to the plaintiff, the defendant is liable to the plaintiff for damages under Section 20 (12), Title 49 of the United States Code and amendments thereto [49 U.S.C.A. Sec. 20 (12)] which reads as follows: 'The common carrier, railroad, or transportation company issuing such receipt or bill of lading, or delivering such property so received and trans-

ported, shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof, and the amount of any expense reasonably incurred by it in defending any action at law brought by the owners of such property.' ''

After pleading the general issue, the defendant, by special pleas, admitted the uniform bill of lading contract, admitted receiving the five cartons from the consignee, and admitted hauling them from Adamsville to Chattanooga, Tennessee. Defendant denied, however, any negligence in handling the shipment or any wrongful act of omission or commission, and affirmatively averred that the five cartons were delivered in good condition to the plaintiff as evidenced by plaintiff's receipt therefor, and the defendant denied that it was indebted to plaintiff for the value of the lost merchandise.

At the conclusion of all the evidence the trial court overruled the defendant's motion for a directed verdict, and the trial resulted in a jury verdict for the plaintiff for $1,389.60 and $361.32 interest, making a total of $1,750.92. This verdict was approved by the trial judge, and upon the overruling of the defendant's motion for a new trial this appeal in error was granted and perfected, and errors have been assigned, the first being there was "no material evidence to support the verdict."

█ While the above assignment involves a review of all the evidence, such review is only to determine if there is any material evidence to support the verdict. This view requires us to take the strongest legitimate view of all the evidence favorable to the plaintiff, disre-

gard all countervailing evidence, and indulge all reasonable inferences to uphold the verdict. Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941.

There was a sharp conflict in the evidence as to the number of cartons received at plaintiff's freight terminal in Chattanooga, the plaintiff contending there were only 4 while the defendant insisted that plaintiff's agent gave a receipt for 5. This conflict in the evidence presented a factual question which was settled by the jury's verdict that the plaintiff received only 4. As to the number of cartons received, plaintiff's Terminal Manager, A. D. Cogburn, testified as follows:

"Q. I ask you whether there is as part of the claim a statement as to the number of cartons that were received by the consignee? A. The consignee claims there was one carton short.

"Q. And that they received how many? A. Four.

* * * * * *

"Q. I ask you whether or not there is also attached to the bill of lading a copy of freight bill? A. There is.

* * * * * *

"Q. What, if any, indication is shown on that as to shortage? A. There is notation 'one short'.

"Q. I will ask you if the typewritten description shows how many cartons there were? A. It shows there were five.

"Q. And I ask you whether or not it is customary to indicate shortages on shipments in that nature? A. That is right. As I told you while ago, if it is delivered short, you can write it on because the bill has already been made.

* * * * * *

"Q. (By Mr. Buchanan) Mr. Cogburn, did your

company ever receive five cartons of this shipment? A. We did not.''

This witness further testified that when the consignee's claim for the lost carton was received, he asked the defendant's manager ''if they had it on their floor,'' and not finding it, the local office of the FBI was requested to investigate reports of several alleged thefts from Interstate Commerce shipments in the Chattanooga area; that later the agents of the FBI located several ladies rayon slips, one of which was sent to the consignee whose agent positively identified it as being one of the slips packed in the lost carton; that subsequently three employees who were working for the defendant at the time the shipment was handled were arrested and later plead guilty and were sentenced in the Federal Court for stealing personal property in Interstate shipments.

Cogburn also described the procedure followed in transferring freight from the defendant's loading platform to plaintiff's freight terminal. He said that when there was a transfer the items were loaded from the defendant's platform onto plaintiff's truck and were either reloaded immediately on outgoing trucks or stored in its freight house, the plaintiff's dock foreman making a check personally of the items received or transferred. He said that plaintiff's offices and terminal stayed open all the time, the area around the loading platform being well lighted at night, and that the defendant closed its office and terminal at night as well as on the weekend.

Plaintiff's dock foreman, Hoyt C. Prather, testified that he personally checked the number of cartons received, and that there were only four, as he indicated on the ''Waybill'' dated December 6, 1947, and bearing his initials ''HP''.

Defendant's Vice President, T. L. Seymore, admitted that two of defendant's former employees, William Manning and Don Lee Tinker, who were working for the defendant at the time the cartons were received in Chattanooga, were discharged by the defendant because of theft from the company, but this witness could not say whether it concerned the particular shipment involved.

Don Lee Tinker, introduced as a witness by the defendant, admitted on cross-examination that during the latter part of November 1947, he and William Manning stole a carton of ladies rayon slips from the defendant's terminal where they were employed at the time; that these slips were sold in Chattanooga and were part of an Interstate shipment, and that he and Manning plead guilty and were sentenced in the Federal Court at Chattanooga.

■ Thus, as will be observed from the foregoing review of the facts, there was ample evidence from which the jury could find (1) that the carton in question was never received by the plaintiff from the defendant, and (2) that said carton was stolen while in the custody of the defendant.

■ The rule seems to be well settled in this state that carriers are, in practical effect, insurers, and they are generally held liable in tort for loss of property by theft or embezzlement on the part of their servants while the goods are in their possession or custody. Illinois Cent. R. Co., v. H. Rouw & Co., 25 Tenn. App. 475, 159 S. W. (2d) 839; 13 C. J. S., Carriers, Sec. 71, p. 131 et seq.; 15 A. L. R. (2d) 842.

Under assignment 2 it is urged on behalf of the defendant that the trial court committed error in admitting in evidence, over the defendant's objections, a certified copy of the record from the Federal Court, at Chattanooga

Tennessee, showing that William Manning, a former employee of the defendant, plead guilty to stealing property from an "Interstate shipment of freight," which was in the possession of the defendant, and received a sentence of two years therefor in the Federal Prison.

■ While there are decisions to the contrary, we think that a former plea of guilty in a criminal case is not admissible in evidence in a civil case where the pleader is not a party defendant to the civil case.

"The effect of a plea of guilty as an admission against interest has frequently been held not to be binding upon persons other than the one making the plea, so that the evidence is not admissible in civil actions to which the one making the admission of guilt is not a party, and may be restricted to use against him where he is a party." 18 A. L. R. (2d) at page 1312, and cases therein cited.

In Tennessee Odin Ins. Co. v. Dickey, 190 Tenn. 96, 228 S. W. (2d) 73, 18 A. L. R. (2d) 1284, it was held that the admission in evidence of the record of insured's acquittal on the charge of arson, in a civil case, to collect on a policy of insurance brought in the name of the insured for the use and benefit of the bank, which held a mortgage on the truck to secure a note due it, was reversible error.

■ ■ However, in the instant case, we think that the error was cured by the defendant subsequently introducing similar evidence by its witness Tinker who admitted that the carton of slips was stolen from the defendant's premises by him and Manning, and that he, the witness, plead guilty and was sentenced in the Federal Court for the theft. Neal v. Peden, 38 Tenn. 546; 53 Am. Jur., Sec. 144, pp. 129, 130; Wigmore on Evidence, 3rd Ed., Vol. 1, Sec. 18, pp. 344, 345; 64 C. J., Sec. 1174, p. 1291. Moreover, there being other credible evidence to support the jury's verdict, the alleged error was, for

reasons stated, harmless in the absence of an affirmative showing to the contrary. Code Sec. 10654; Johnson v. McCord, 36 Tenn. App. 14, 251 S. W. (2d) 144.

Under the two remaining assignments the defendant complains (1) because during the trial the court permitted the plaintiff, over the defendant's objections, to amend its declaration to sue for 6% interest on its original claim, and (2) because the trial court instructed the jury "If you find that this plaintiff is entitled to recover, it will be your duty to fix the amount * * * at $1,389.60 principal and $361.32 interest, or a total of $1,750.92."

■■ On application seasonably made, a declaration may be amended "at any stage of the proceedings" so as to include interest on the fixed value of lost goods, and the allowance of such amendment is a matter resting within the sound discretion of the Court. Code Sec. 8711. Chattanooga Ice Delivery Co. v. George F. Burnett Co., Inc., 24 Tenn. App. 535, 147 S. W. (2d) 750; Caldwell v. Hodges, 18 Tenn. App. 355, 77 S. W. (2d) 817. Likewise, the allowance of interest as a part of the damages for the lost carton was discretionary with the trial court, and we have found no indication that there was any abuse of discretion. West Construction Co., v. Seaboard Airline Ry. Co., 141 Tenn. 342, 210 S. W. 633; 13 C. J. S., Carriers, Sec. 265, p. 616; 9 Am. Jur., Sec. 787, p. 908; 96 A. L. R., at page 46, and cases therein cited.

It results that all assignments of error will be overruled and the judgment below will be affirmed at the defendant's costs.

McAmis, P. J., and Hale, J., concur.

ON PETITION TO REHEAR.

HOWARD, J. The defendant, Inter-City Trucking Company, has filed a petition to rehear alleging that its

witness Don Lee Tinker never admitted in his testimony that during the latter part of November, 1947, he and William Manning stole a carton of ladies rayon slips from the defendant's terminal where they were employed at the time. We quote the following excerpts from the testimony of Tinker:

"By Mr. Cunningham:

"Q. I will ask you if you formerly worked at the Inter-City Trucking Company? A. Yes.

"Q. Here in Chattanooga? A. (Witness nods affirmatively.)

"Q. Were you working there in December, 1947? A. I was.

"Q. Was William Manning also working there at that time? A. Yes, sir.

"Q. There has been introduced into this record an information in the U. S. District Court here by the Attorney General—by the United States Attorney, charging you with taking from the docks of the Inter-City Trucking Company 60 dozen white ladies slips in the value of $1,389.60 I will ask you whether or not you did that? A. (Witness nods negatively.)

"Mr. Buchanan: I object to that question. The record here is he plead guilty to it and was sentenced.

*        *        *        *        *        *

"Mr. Cunningham: He wasn't under oath at the time he pleaded guilty.

"The Court: The Court will advise him.

"Mr. Tinker, there has been introduced in this record a certified copy from the Federal Court an information against you charging you with certain thefts to which you plead guilty and were sentenced to two years in the penitentiary.

"The Witness: that is right.

\* \* \* \* \* \*

"Q. (By Mr. Cunningham) Go ahead and answer the Court, you started to say something. A. I plead guilty of being with a fellow, not of taking the merchandise.

"Q. Who was the fellow that you mentioned? A. Bill Manning.

"Q. William Manning? A. That's right.

\* \* \* \* \* \*

"Q. Was the package he picked up this 60-dozen carton of underwear? A. That's right.

\* \* \* \* \* \*

"Q. You were convicted in the Federal Court for this action, were you not? A. That is right.

"Q. And you served some time in the penitentiary, did you not? A. That's right.

"Q. Or were you probated?

"Mr. Cunningham: He wasn't convicted. He plead guilty over there.

"Q. (By Mr. Buchanan) What happened to you in Federal Court? A. I was convicted.

\* \* \* \* \* \*

"Q. I show you the first count, I will read to you this first count of the official file of the Federal Court and ask you if that is the matter to which you plead guilty. 'On or about the 1st day of December, 1947, within the Southern Division of the Eastern District of Tennessee, the defendant, Don Lee Tinker, with intent to convert same to his own use, stole from off the dock of the Inter-City Trucking Company, 1416 Fort Street, Chattanooga, Tennessee, 60 dozen white, ladies slips of the value of $1,389.60, which were then

and there moving as and which were a part of and which constituted an interstate shipment of freight, then and there moving in interstate commerce from Adamsville, Tennessee, to Easton, Pennsylvania, and which then and there remained 'undelivered to consignee.' Did you plead guilty to that? A. Yes, I plead guilty.''

The slight variance in the evidence as to when the shipment was stolen is not material as (1) there was only one carton of rayon slips stolen from the defendant by Tinker, et al., and (2) the information charged that this occurred ''on or about the 1st day of December, 1947.''

Petition to rehear will be denied.

McAmis, P. J., and Hale, J., concur.