SANDRA PAISLEY v. ROBERT PENNINGTON, FREDA D. PENNINGTON, ERNEST JACKSON d/b/a United Cab Company and RAY W. HUTCHISON.—399 S.W.(2d) 322.

Middle Section. June 25, 1965.

Certiorari Denied by Supreme Court November 1, 1965.

Paul D. Welker, Clarksville, for plaintiff.

Sam E. Boaz, James C. Cunningham, Clarksville, for defendants.

SHRIVER, J. The parties will be referred to as plaintiff and defendants as they appeared in the Court below.

This suit was brought by Sandra Paisley against the above named defendants to recover for personal injuries suffered as the result of an automobile accident which occurred about 12:30 P.M. December 15, 1962 at the intersection of Union Street and South Second Street in Clarksville, Tennessee.

Plaintiff was riding as a passenger in the right front seat of a 1960 Corvair automobile owned by Robert

Pennington and which was being operated at the time by Freda Pennington, wife of the owner and a sister of the plaintiff.

The said Corvair automobile was proceeding Eastwardly on Union Street which intersects South Second Street at right angles and which intersection is approached from both the West and the North on a down grade. South Second Street is a through street while there is a stop sign on Union Street at the intersection.

Defendant, Ray W. Hutchison, was the driver of a taxi-cab owned by defendant Ernest Jackson d/b/a United Cab Company. Said cab driver testified that, as he was entering this intersection, he looked to his right and saw the Corvair driven by Mrs. Pennington skidding Eastwardly and down grade toward the intersection. He testified that he could not avoid the collision since the Corvair proceeded past the stop sign into the intersection and struck the cab at the right front door causing him to lose control of said cab which proceeded across to its left and into a tree, resulting in substantial damage to said cab. He also testified that he was travelling at about 15 miles an hour as he approached this intersection and explained that he was driving slowly because the street was so rough at that point that it was dangerous to drive any faster.

Two Clarksville policemen who investigated the accident testified that the Corvair driven by Mrs. Pennington left skid marks extending 45 feet Eastwardly on Union Street past the stop sign and into the intersection up to the point of impact. They said they did not see any skid marks left by the cab.

Wally Green a witness for the plaintiff testified that he was standing on his front porch and saw the taxi-cab approaching the intersection and heard its wheels sliding and described the speed of the taxi as being "fast" and that it went across the street and into a tree that was eighteen or twenty inches in diameter and struck it so hard that "it looked like it was going to knock the limbs off the tree". Plaintiff estimated the speed of the cab at 40 miles an hour or faster. The plaintiff also testified that the vehicle in which she was riding came to a stop "kind of out in the intersection" and that this was done because it was necessary in order to see up the hill in the direction from which the taxi was coming. She said that, as they entered the intersection, she called out to her sister, "Freda, look out, there comes a cab" and that immediately after the warning the vehicles collided.

The case was submitted to the jury who returned a verdict in favor of the owner and driver of the taxi-cab, and against the defendants Robert Pennington and wife Freda Pennington and assessed damages against the Penningtons at $15,000.00. This verdict was approved by the trial Court and judgment entered thereon. The motion for a new trial was overruled and the cause appealed in error to this Court.

Attorneys for plaintiff argue that the taxi-cab must have been travelling beyond the speed limit and showed proximate negligence by reason of the fact that it ran some 40 feet beyond the point of collision and ran into a tree so hard that it severely damaged the front end of the cab and that the jurors, in disregarding this evidence, showed that they were prejudiced against the plaintiff-in-error. This argument is made in support of the first

assignment which is that the verdict of the jury evinces passion, caprice and prejudice against plaintiff-in-error.

 Of course it is true that under our decisions this Court does not weigh the evidence in a case where there is a jury verdict which had been approved by the trial Judge, but we only examine the record to determine if there is any material evidence to support the verdict. Campbell v. Campbell, 29 Tenn. App. 651, 199 S.W.2d 931, and many cases.

 On this point we must conclude that there is material evidence in the record upon which the jury may have concluded, as it evidently did, that the driver of the taxicab was not guilty of proximate negligence so as to render him or the owner of the cab liable to the plaintiff but that the driver of the car in which plaintiff was riding was guilty of negligence which proximately caused this accident.

Several days after the verdict and judgment Judge Puryear, who had tried the case, called the attorneys representing the parties and told them that he had received information that one of the jurors, Alfred G. Abernathy, had visited the scene of the accident during the lunch hour when the cause was on trial and that he felt that it was his duty to inform the attorneys of this fact.

At the hearing of the motion for a new trial this juror was called to testify and stated, in substance, that, as he went to lunch during the course of the trial, on an impulse he drove one block out of his way and passed by the intersection where the accident had occurred. He **stated that he did not stop and made no measurements** but merely drove by the scene.

Judge Puryear inquired of the witness whether he made any statement in the jury room during the deliberations concerning the location of the accident that did not appear in the pictures exhibited at the trial and the witness replied, "I don't believe I did Judge".

He was asked on examination by counsel,

"Q. Was your decision, as far as serving on the jury is concerned, was it affected by the fact that you drove by this scene?

A. I don't feel like it was in any way."

He was asked if he had been by this place before and he said he had many times and that he was familiar with it.

On cross-examination he was asked if he made any mention of the scene of the accident when he was discussing the case in the jury room and he replied that they had some pictures that were passed around and that he pointed out some of the things on the pictures that were familiar, but he didn't think that it had anything to do with his visiting the scene. He stated that he told some of the jurors as they went out of the Court room to deliberate that he had driven by the scene. He was then asked and answered as follows:

"Q. And made an explanation to them, and do you know whether or not that was solely from evidence or that you might have used some of the things that you observed when you visited the scene?

A. Well, I believe I would be the first one to admit it if I did if it did have any influence, because I do want to be fair about this thing, I really do. And I just simply don't feel like it influenced me in any way."

The second assignment of error is that one of the jurors made an unauthorized visit to the scene of the accident during lunch hour and used this evidence in the jury room to prejudice the jury against the plaintiff-in-error.

After hearing the juror testify, the trial Judge was of opinion that, while the conduct complained of was improper, it was not affirmatively shown that it materially affected the verdict of the jury and that the Harmless Error Statute, T.C.A. 27-117, should be applied and the motion for a new trial overruled.

■ It is pointed out that the mere probability that the error complained of affected the result of the trial is not sufficient to justify a reversal. Thomason v. Trentham, 178 Tenn. 37, 154 S.W.(2d) 792, 138 A.L.R. 461; Johnson v. McCord, 36 Tenn.App. 14, 251 S.W.(2d) 144; and other cases.

■ ■ We think the rule laid down in the foregoing cases follows the general rule stated in 53 Am.Jur., Trial, Section 897, where it is said that whether the fact of an unauthorized view or inspection by the jury or by a juror during the progress of either a civil or a criminal trial requires the setting aside of the verdict and granting of a new trial depends upon the circumstances of the particular case, the general rule being that this is not ground for a new trial unless it appears that the verdict was affected thereby; that much must be left to the discretion of the trial judge and that the verdict is not vitiated where the unauthorized view is casual, incidental, and not reasonably calculated to influence the jury in arriving at a verdict.

■ Under the facts and circumstances shown by this record we feel that we would not be justified in setting the verdict aside. It results that the assignments of error are overruled and the judgment of the trial Court is affirmed.

Affirmed.

Humphreys, J., concurs.

Puryear, J., not participating.