J. Irby SEAY, Jr., d/b/a Irby Seay
Company, Plaintiff-Appellee,

v.

COUNTY OF SHELBY,
Defendant-Appellant,

J. Irby SEAY, Jr., d/b/a Irby Seay Company, Individually and on behalf of the
class composed of all holders of Cloverhaven Utility District of Shelby County,
Tennessee, Second Lien Waterworks
and Sewer Revenue Bonds, Plaintiffs-
Appellees,

v.

COUNTY OF SHELBY, Cloverhaven Utility District of Shelby County, Tennessee, The Shelby County Board of Public
Utilities and The Board of County
Commissioners of Shelby County, Tennessee, Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Jan. 31, 1984.

Application for Permission to Appeal
Denied by Supreme Court
May 29, 1984.

⊛═937

McDonald Yawn of Rickey, Klein, Yawn, Bourland & Smith, Memphis, for appellants.

Charles G. Burr and Jef Feibelman, of Burch, Porter & Johnson, Memphis, for appellees.

TOMLIN, Judge.

The defendants in these two cases have appealed from an adverse judgment against them and rendered in favor of certain bondholders by the Honorable William H. Inman, Chancellor, sitting as Special Judge by designation. The two cases were tried together by consent. The first case originated as an appeal by the plaintiff J. Irby Seay, d/b/a Irby Seay Company, from an order or judgment of the Shelby County Quarterly Court which resulted in the consolidation and merger of the Cloverhaven Utility District into Shelby County.

The second case was a class action brought by the same plaintiff some three years subsequent to his appeal in the other case on behalf of all second lien Cloverhaven bondholders. In essence, both cases claim that the consolidation of the Cloverhaven Utility District into Shelby County activated an acceleration of payment clause in the second lien bond resolution initially adopted by the Cloverhaven Utility District.

At the conclusion of the hearing below at which no proof of testimony was taken but which was instead had on exhibits, deposition, and transcript of the record in the county court, the trial judge found in favor of the plaintiff, a holder of some of the second lien bonds, and held additionally that the judgment in favor of the plaintiff in what we call the "appeals" case inured to the benefit of the second lien bondholders for whom the class action was brought. He also awarded the successful parties prejudgment interest from July 1, 1974 to the date of judgment, the former date being the date on which the order of merger or consolidation was adopted by the Shelby County Quarterly Court.

This appeal presents three issues for our consideration: (1) whether the trial court erred in holding that the acceleration provisions of the second lien bond resolution required the payment in full of the bonds held by the plaintiff as a result of the consolidation of the Cloverhaven Utility District into Shelby County; (2) whether the trial court was in error in holding that the judgment in favor of the plaintiff in the statutory appeal inured to the benefit of all other second lien bondholders; and (3) whether the trial court abused its discretion in awarding prejudgment interest. As to issues 1 and 3, we are of the opinion that the trial court was not in error. As to the second issue, we are of the opinion that while the trial court erred in holding that the judgment for the plaintiff in the statutory appeal inured to the benefit of the other second lien bondholders, this does not change the result of the judgment below. We are of the opinion that the trial court should have ruled for the plaintiff in the class action case as the representative of all members of the class, while finding in favor of the defendant in the appeals case.

Wherever appropriate, we will refer to the case initiated by the plaintiff by appeal from the county court as the "appeals case," and to the subsequent case brought by the plaintiff, later certified by the trial court as a class action, as the "class action."

The appeals case and the class action were joined for trial by consent of all the parties. The cases are presented to this Court in that fashion. In its brief the appellant states:

Appellant is unaware of any factual conflicts in the cases here on appeal. All documentation was admitted into evidence by stipulation, including the Trial Exhibits; transcript; record certified by the County Court Clerk; deposition; and technical record. Stipulation was made that these cases could be adjudicated by the Trial Judge on this record, and no proof or testimony was taken at the hearing. (R. 181) Likewise, the decision on appeal will be based solely on questions of law.

The appellee does not contest this approach on appeal of this litigation; in fact, it tacitly concurs in it.

The Cloverhaven Utility District (referred to hereafter as the "District"), was created on July 13, 1959, by the Shelby County Quarterly Court, as a municipal corporation authorized to provide assist-

ance for the furnishing of water, sewer, sewage disposal, and fire protection within and without the district. Following its creation, commissioners of the District were elected and they assumed office. They then proceeded with steps to bring about the construction of water lines and sewage disposal system within the district, for which financing needed to be arranged. Prior to the issuance and sale of bonds to finance construction it was recognized by the commissioners that there would be a shortage of funds available to complete the project. Accordingly, they adopted an alternate financing proposal which contemplated that the District's attorneys, consulting engineer, fiscal agent, and labor and materials suppliers to the project would agree to a reduction in the amount of their cash compensation and would agree to accept in lieu thereof a proportionate share of a second lien, non-interest bearing bond issue from the District.

On July 1, 1961, the District commissioners adopted two separate bond resolutions. The first, designated "First Lien Bond Resolution," authorized the issuance of $580,-000, principal amount of first lien waterworks and sewer revenue bonds. This issuance consisted of 580 bonds in the denomination of $1,000 each. Their maturity dates ran from July 1, 1967, to July 1, 1996. Payment of the principal and interest on these bonds was to be made from the revenues realized by the District in the operation of its water and sewer systems. As collateral security, the holders of these bonds were given a first mortgage lien upon the entire waterworks and sewer system of the District. These bonds were sold and held publicly and are not in any way involved in this litigation.

Also on July 1, 1961, the District, through its commissioners, adopted a Second Lien Bond Resolution, which authorized the issuance of $480,000 of second lien waterworks and sewer revenue bonds. This issuance consisted of 480 second lien bonds which were also issued in denominations of $1,000 each, bearing no interest, and all maturing on July 1, 1996. While payable solely out of the revenues realized

by the District, they were made subordinate to the first lien granted to the first lien bonds.

The second lien bonds were callable by the District at any time prior to maturity upon the payment of a premium of $100 per bond, provided revenues were produced sufficient for this purpose under a stated formula. These bonds were issued to the attorneys, engineers, underwriters, suppliers, and other persons involved in the creation of the District, as partial payment for their services. The plaintiff, as the District's consulting engineer, reduced its cash fee for engineering services by approximately $20,000 and received 77 of the second lien bonds in return. Similar arrangements were concluded between the District and others who received the bonds.

Section 10 of the Second Lien Bond Resolution stated in part as follows:

> *Section 10. Covenants Regarding the Operation of the System.* The municipality hereby covenants and agrees with each and every holder of the bonds:
>
> . . . .
>
> (e) That the municipality will not sell, lease, mortgage or in any manner dispose of the system, or any part thereof, including any and all extensions and additions that may be made thereto, until all of the bonds have been paid in full, both principal and interest. . . .

As will be developed hereafter, the trial judge found, as do we, that this provision is highly material to the outcome of this litigation.

It appears that the District constructed its facilities which operated uneventfully for approximately ten years. In April, 1971, the Shelby County Quarterly Court adopted a resolution directing the Shelby County Board of Public Utilities to take steps to acquire "by negotiations if possible," existing utility districts in Shelby County, including the District involved in this litigation.

At this point it also should be noted that the language referred to above as Section 10(e) also appeared in the First Lien Bond

Resolution, but again it is stated that the first lien bonds are not involved in this litigation. In February, 1972, the Shelby County Board of Public Utilities unanimously adopted a resolution recommending to the Shelby County Quarterly Court that a contract be entered into for the acquisition of all properties and assets of the District, "and to arrange to redeem all outstanding bonds." The following month, the Shelby County Quarterly Court unanimously adopted a resolution directing the Shelby County Board of Public Utilities to negotiate a contract with the District for the acquisition of all of its assets and obligations, the resolution providing further that "Shelby County issue general obligation bond (sic) sufficient to pay off the outstanding revenue bonds of the Cloverhaven Utility District which outstanding bonds are in the amount of $1,020,000.00."

Negotiations continued between the parties—that is, the District and Shelby County. In July, 1973, a contract was entered into between Shelby County and the District for the acquisition of the assets and liabilities of the District. Rather than following the terms of the resolution of March 6, 1972, the contract provided that Shelby County would assume the indebtedness of the bonds. This provision was stated as follows:

10. The County for itself and through the Shelby County Board of Public Utilities agrees that pursuant to the provisions of Section 6–2604, Tennessee Code Annotated, that the County will assume the operation of, or cause the Shelby County Board of Public Utilities to assume the operation of, the Utility District water and sewer and fire protection systems in such territory as presently being served by the District, and account for the revenues therefrom in such manner as not to impair the obligations of Contract with reference to such bonds or other obligations of the District, and shall fully preserve and protect the Contract rights vested in the owners of such outstanding Bonds, obligations or contractual interests.

In September, 1973, the District and the Shelby County Board of Public Utilities adopted a joint resolution, referring to the contract dated July 4, 1973, which called for the assumption of the bonded indebtedness of the District by the county.

A joint petition was filed in the Shelby County Court on behalf of the District, the Board of Public Utilities, and the Shelby County Commissioners on March 27, 1974. This petition asked the county court to hold a public hearing for the purpose of ratifying and approving the July 4, 1973 contract referred to above, which provided for the consolidation merger into Shelby County and the assumption by Shelby County of all the District's bonded indebtedness. In the joint petition no reference was made to Section 10(e) of the first and second lien bond resolutions.

Shelby County Court published notice in a local newspaper of a public hearing to be held on June 10, 1974, to consider the relief requested in the joint petition. Counsel for the District appeared and acted as an advocate for both the District and the county.

At the public hearing of June 10, 1974, the plaintiff, one of the second lien bondholders, appeared to protest the proposed action being requested of the court. He read into the record a letter addressed to the chairman at that time of the quarterly court, formally objecting to the proposed merger and consolidation unless provisions were made to pay off "all the outstanding bonds," in accordance with the provisions of Section 10(e) of the bond resolutions. The Shelby County Quarterly Court took the matter under advisement, and on July 1, 1974, it adopted a resolution which ordered that the District should be consolidated and merged with Shelby County, "and all of the property, franchise facilities and assets of said Utility District, including contracts and contract rights, are hereby divested out of it and title thereto is vested in Shelby County."

As to the outstanding first and second lien bonds of the district, the resolution adopted stated:

Shelby County shall assume operation of the utility systems hereby consolidated and merged in such manner as not to impair the obligations of contract with reference to bond issues or other legal obligations of said Utility District, and shall fully preserve and protect the contract rights vested in the owners of such outstanding bonds, obligations, or contractual interests; and to that end the County shall, in accordance with the obligations undertaken in the aforesaid Contract dated July 4, 1973, undertake and assume unconditionally to guarantee the payment of the two outstanding issues of bonds of the District. . . .

Within thirty days of the date of entry of this order, the plaintiff prayed an appeal to the Circuit Court of Shelby County from this action of the Shelby County Quarterly Court.

Subsequently, the plaintiff sought to have the appeals case certified as a class action. This was denied. Thereafter, in September, 1977, he filed a separate class action for a declaratory judgment and writ of mandamus on behalf of all the second lien bondholders against Shelby County and other defendants. The class action, in addition to alleging the violation by Shelby County of Section 10(e) of the second lien bond resolution, made charges of breach of contract and other violations by Shelby County that took place after the effective date of the merger and consolidation of the District into Shelby County. Following the filing of an answer by the defendants to the class action and upon motion by the plaintiff, the trial court certified the class under Rule 23.02(3) of the Tennessee Rules of Civil Procedure. Following proper notice, no holders of the second lien bonds sought to be excluded from the class.

After the defendants had joined issue in both cases, the appeals case and the class action were joined by consent for trial. Counsel for all parties at trial below stipulated that the appeals case could be adjudicated on the basis of the existing record. In addition, all documentary exhibits were admitted in evidence in both cases by stipulation of counsel.

## I. THE LEGAL RIGHTS OF THE SECOND LIEN BONDHOLDERS.

First, we have the plaintiff, acting alone for his company, appearing before a public hearing of the Shelby County Quarterly court, expressing his objection to the consolidation and merger, then appealing to the circuit court from an adverse ruling of the Shelby County court.

The plaintiff is also acting for himself and all the other members of the class, seeking redress by a separate, independent action. When the trial court duly certified the members of the class and proper notice was given, the rights of all the second lien bondholders were thus placed before the court for consideration.

■ Before proceeding, there are two elements of this case that we are not going to consider. First of all, in their brief, the appellants for the first time raise the issue of the validity of the plaintiff's appeal to the circuit court from the county court. Inasmuch as this issue was not raised below or considered by the trial court, we will not here consider it. *Sutton v. Bledsoe,* 635 S.W.2d 379 (Tenn.App.1981); *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978).

■ Furthermore, in the complaint in the class action there are many allegations against the defendants about matters that occurred after the effective date of the merger and consolidation. None of these properly concerns itself with the principal issue in this case on which the trial court based its ruling. While it might be safe pleading on the part of the plaintiff to include these allegations, it is apparent that the trial court found them irrelevant and immaterial to this litigation, and properly so.

The initial resolution adopted by the Shelby County Quarterly Court instructed the Shelby County Board of Public Utilities to negotiate a contract with the District "for the acquisition of all the assets and

obligations of the Cloverhaven Utility District."

The joint petition for dissolution filed by the District, the Shelby County Commissioners, and the Shelby County Board of Public Utilities called for the transfer of all assets from the District to Shelby County, "leaving the Cloverhaven Utility District of Shelby County, Tennessee without any assets whatsoever."

The order consolidating and merging the District with Shelby County contained the following finding:

That the Cloverhaven Utility District of Shelby County, Tennessee, and the Shelby County Board of Public Utilities and the County of Shelby, acting through their respective governing bodies, have adopted resolutions concurring in the consolidation and merger of said District with the County of Shelby, and the transferring of all assets and obligations whatsoever of said District to the County.

The order provided in part that all of the property and assets of the District, including contracts and contract rights, were divested out of the District and title was vested in Shelby County. It also stated that Shelby County would unconditionally guarantee the payment of the first and second lien revenue bonds of the District.

Section 10(e) of the bond resolution of July 1, 1961 reads as follows:

Section 10. ... The municipality hereby covenants and agrees with each and every holder of the bonds:

....

(e) That the municipality will not sell, lease, mortgage or *in any manner dispose of* the system, or any part thereof, ... until all of the bonds have been paid in full, both principal and interest. (emphasis added).

Section 16 of the same bond resolution reads in part as follows:

*Section 16. Resolution a Contract.* The provisions of this resolution shall constitute a contract between the munici-

pality and the holder or holders of the bonds ....

■ There is stated on the face of the second lien bonds that the bonds were issued in accordance with the terms and conditions of a resolution adopted by the commissioners of the District on July 1, 1961.

Special Judge Inman in his memorandum opinion stated:

[T]his Court believes that Section 10 E of the resolution required payment of the second lien bonds if the district were otherwise disposed of, the Court being firmly of the opinion that the district was otherwise disposed of, otherwise the provision is utterly meaningless.

We agree.

While the second lien bonds were callable under certain circumstances at the will of the District, the bond resolution—i.e., the contract between the bondholders and the District—contained in essence an acceleration of payment clause insofar as the second lien bonds were concerned. A sale, lease, mortgage, or a disposition in any manner of all or part of the system mandated that the second lien bonds be paid in full. This is very much akin to an acceleration of payment clause in a lease triggered by a default in the payment of rent or a promissory note wherein it is provided that the balance becomes due if the maker of the note fails to make a payment on time. In each case it is a matter of contract rights between the parties that are readily enforceable.

It would appear that counsel for the District has erroneously relied too heavily on the opinion of out-of-state bond counsel, rather than the case law of this state. At the time of the merger, counsel for the District sought a legal opinion from the same bond counsel that not only gave a bond opinion for the District in connection with the issuance of the first lien bonds, but who also drafted both bond resolutions of July 1, 1961, as to the effect of the acceleration provisions of the First and Second Lien Bond Resolutions.

The joint resolution adopted by the District and Shelby County, as well as the contract of July 4, 1983, called for the assumption of the first and second lien bonds of the District by the County. Counsel for the District obviously had some concern about the wisdom of this action, for in December, 1973, he wrote to Chicago bond counsel, seeking their legal opinion specifically as to the effect of the transfer of the assets and liabilities of the District to Shelby County in view of the restrictions contained in the two bond resolutions. The bond counsel responded shortly thereafter.

That counsel for the District misinterpreted the bond counsel's opinion in response to his inquiry is revealed in the transcript of the county court hearing of June 10, 1974. At that time counsel for the District stated that they were both aware of and concerned about the ramifications of Section 10(e) on this merger, but that Chicago bond counsel had issued their opinion to the effect that the merger would not constitute a violation of Section 10(e) of the District's bond resolution of July 1, 1961.

However, a reading of the February 8, 1974 letter opinion from the bond counsel to the District's legal counsel does not support this position, nor does it justify such a reliance by the District. The pertinent portion of the bond counsel's letter reads as follows:

Please bear in mind that we cannot speak on behalf of any of the holders of the bonds, and for that matter we did not act as bond counsel with respect to the second lien bonds. Even though the district has covenanted in the resolutions adopted July 1, 1961 authorizing the outstanding bonds not to sell or in any manner dispose of the systems until the bonds are paid in full, both principal and interest, we feel persuasive argument can be made that such restrictive language should not prevent the parties from contracting pursuant to TCA 6–2604 for the takeover of the district assets, the assumption of the operation of the district systems and the accounting for the revenues thereof in such a man-

ner as to protect rights of the bondholders. *Although there may be a technical violation of the covenant in said resolutions not to convey or dispose of assets,* it is difficult for us to see, under the circumstances, any impairment of the substantive rights of such holders. (emphasis supplied). It is entirely possible, of course, that some of the bondholders might take a different view of the matter. . . .

To this Court, this letter waves a red flag insofar as the assumption of the bonds are concerned. It goes further, however, and states that the contract as written likely constitutes a technical violation of the covenant 10(e). Whether technical or nontechnical, a violation of a covenant such as this is nonetheless a violation.

The receipt of this opinion letter is not the first time the District had been warned about the potential effect of Section 10(e). In September, 1971, prior to the adoption of the initial resolution concerning merger, Chicago bond counsel wrote the District's counsel as follows:

We understand that in Section 10(e) of the resolution adopted on July 1, 1961 authorizing the outstanding Waterworks and Sewer Revenue Bonds of the district dated July 1, 1961, the district covenants that it will not sell or in any manner dispose of its water and sewer systems until such bonds are paid in full. . . .

[W]e feel persuasive argument can be made that the restrictive language appearing in the resolution of July 1, 1961 should not prevent the parties from contracting pursuant to TCA 6–2604 for the takeover of the district assets and the assumption of the operation of the district systems and the accounting for the revenues thereof in such a manner as to protect contract rights of the district bondholders. Although there may be a technical violation of Section 10(e), it is difficult for us to see, under the circumstances, any impairment of the substantive rights of such holders. It is entirely possible, of course, that some of the

bondholders might take a different view of the matter.

The intended effect of Section 10(e) of the bond resolution is likewise revealed in a letter from the president of the fiscal agent for the District to the same Chicago bond counsel at the time that it was preparing the First and Second Lien Bond Resolutions:

> We also want both resolutions to be set up in such a way that any other governing power that acquires or takes over the governing power of this District area will be compelled to call the entire Second Lien issue ... We have in mind the possibility that the City of Memphis ... and Shelby County might consolidate their governments into a metropolitan type government which in either case we want it made compulsory for them to call our Second Lien bonds ... [We] want you to draw the resolution in such a way that this condition is mandatory for either of these situations.

The action of the trial court is supported by the case law of this state. In the case of *State v. Town of Selmer*, 220 Tenn. 304, 417 S.W.2d 532 (1967), a writ of mandamus was brought against the town of Selmer and some of its city officials. The plaintiff was the holder of certain gas revenue bonds issued by the town of Selmer. The bond resolution pertinent to the bonds owned by plaintiff called for the operation of the gas system in the town of Selmer to be conducted by an independent board of commissioners appointed by the Board of Aldermen of the town. This was done. However, several years later, by ordinance, the Board of Aldermen took over the duties of the commissioners. The gravamen of the plaintiff's action attacked this assumption of control by the Board of Aldermen of the Town of Selmer as a violation of the rights of the bondholders and contrary to the initial bond resolution. In affirming the chancellor on this question, the court stated:

> We are of the opinion, however, that the chancellor was correct in holding that the provisions of the bond resolution

quoted above constituted a contract between the municipal corporation and the holders of the natural gas revenue bonds. This resolution was valid in its inception and is valid now, and is binding upon the governing body.

*Id.* 417 S.W.2d at 535.

The *Town of Selmer* case also negates one of the contentions in the case *sub judice* by the defendants to the effect that the bondholders have not been injured by the failure to pay off the second lien bonds, because these bonds have now been guaranteed and assumed by Shelby County. In *State v. Town of Selmer* the Court said:

> We find no merit in the insistence of the Mayor and Board of Aldermen that the holders of the bonds have not been damaged by the change of control. The holders of the bonds are entitled to rely upon the terms and conditions of the bond resolution, and are entitled to have them enforced.

*Id.* 417 S.W.2d at 535.

More in point is an opinion by this Court styled *Pitts And Company, Inc. v. City of Memphis*, 558 S.W.2d 448 (Tenn.App.1977) cert. denied (1977). The plaintiffs, subdivision developers, sued the City of Memphis to enforce the terms of an aid-in-construction contract that they had entered into with a water utility district, which was subsequently taken over by the defendant. As in the case at bar, the city was fully advised of the contents of the plaintiff's contract when it agreed to take over the district and to assume its obligations. The acceleration of payments clause in the *Pitts* contract is similar to that in the case under consideration, providing that certain funds were to be paid in full to the plaintiffs in the event "... the ownership or contract of [the district] is sold to, acquired by or transferred to any other agency, corporation, utility company or division of any Municipal or County Government...." *Id.* at 449.

In *Pitts* this Court held that the argument of the city that there was no sale, acquisition or transfer so as to activate the acceleration clause was without merit. In

affirming the trial court's judgment that the plaintiffs were entitled to be compensated under the acceleration of payments clause, this Court, speaking through former Judge Matherne, said:

> We hold that the city cannot under T.C.A. § 6–318 accept some obligations under the contract between the District and the plaintiffs and reject other obligations thereunder. That statute requires an agreement that will fully preserve and protect the contract rights vested in holders of any outstanding revenue bonds of the District and "other obligations." The plaintiffs' contract is, admittedly, an "other obligation" of the District.

*Id.* at 450.

In the case at bar, the statute under which the merger took place (T.C.A. § 7–82–202(e)), the joint resolution of the parties to the contract, and the contract itself, all provided that Shelby County would assume the operation of the District system in such a manner so as not to impair the obligations of contract with reference to the outstanding bond issues, and "shall fully preserve and protect the contract rights vested in the owners of such outstanding bonds."

■ We hold that Section 10(e) of the Second Lien bond resolution is a contract right vested in the plaintiff and other holders of the outstanding bonds, and that the defendants have failed to "fully preserve and protect" these contract rights.

■ The defendants contend that the language found in T.C.A. § 7–82–202(e) clearly indicates that the legislature contemplates the assumption of bond indebtedness upon the merger or consolidation of two or more utility districts. As pointed out by the plaintiff, statutory authority for the merger and consolidation of utility districts did not exist in 1961, when the second lien bonds were issued. Notwithstanding the fact that the defendants followed the statutory framework in effecting the merger, that could have no effect on the rights of bondholders issued prior to the merger

legislation. This contention is thus without merit.

Furthermore, while all the parties have stipulated that the District and Shelby County made the requisite showing of "public convenience and necessity" to carry out the merger and consolidation in 1974, under T.C.A. § 7–82–202, the rights of the bondholders under the applicable bond resolutions are in no way diminished by this fact. While we have some difficulty with the concept of the judgment in favor of the plaintiff in the appeals case inuring to the benefit of the other bondholders in the class action, we have no difficulty with the result reached. However, we are of the opinion that the rights of the holders of the second lien bonds present a justiciable issue in the class action. The holders of the second lien bonds are entitled to rely upon the terms of the bond resolution of July 1, 1961. *State v. Town of Selmer, supra.*

Notwithstanding the fact that only the sole bondholder who appeared before the Shelby County Quarterly Court and objected to the merger had the right pursuant to statute to appeal from the action taken by the quarterly court, this does not constitute the exclusive remedy available for the wrongs that have occurred. The original Utility District Act of 1937 was first codified as T.C.A. § 6–2601, et seq., [now T.C.A. § 7–82–101, et seq.] T.C.A. § 7–82–505 gives holders of utility district bonds certain statutory remedies. This section reads in part as follows:

> Any holder of said bonds or any coupons representing interest thereon may either at law or in equity, by suit, action, mandamus, or other proceeding, in any court of competent jurisdiction, protect and enforce such statutory lien and compel performance of all duties required by this chapter, including the making and collection of sufficient rates for the service or services, the proper accounting therefor, and the performance of any duties required by covenants with the holders of any bond issued in accordance herewith.

*Id.*

■ As was held in *State v. Town of Selmer, supra,* the provisions of the bond

**414**

resolution constitute a contract between the issuing municipality and the holders of the bonds.

■ In the appeals case, the question of the right of the plaintiff to recover from the defendants was not before the court. Only those issues pertaining to the merger and consolidation of the district were. *In the appeals case*, one of these issues—the public convenience and necessity—was stipulated. The other issue was not disputed. Accordingly, the trial court should have entered judgment for the defendants.

■ In the class action, for the reasons stated above, the trial judge should have entered judgment for all plaintiffs against the defendant Shelby County.

## II. PRE–JUDGMENT INTEREST.

The trial court awarded pre-judgment interest to all bond-holders from and after the date of consolidation and merger—July 1, 1974. In making this award of interest, the trial court found "that the Quarterly Court ... was aware of the prohibitory language of Section 10(e) of the Second Lien Bond resolution and acted in knowing contravention of the terms thereof; ..."

■ A trial court's decision of whether to award pre-judgment interest or not on an unliquidated claim is largely within its discretion and, on appeal, this Court will overturn such an award only upon a showing of abuse of discretion. *Inter-City Trucking Company v. Mason & Dixon Lines*, 38 Tenn.App. 450, 276 S.W.2d 488, 492 (1955); *Smithwick v. Young*, 623 S.W.2d 284, 293 (Tenn.App.1981).

■ The evidence in the record before us clearly supports the above finding of the trial court. In addition, it is unquestioned that since July 1, 1974, Shelby County has had the benefit of the funds that would otherwise have been due the second lien bondholders, and by the same token, these bondholders have been deprived of the use and benefit of these funds since that date. The defendants' contention that the trial court erred in awarding pre-judgment interest is without merit.

The judgment in favor of the plaintiff in the appeals case and the judgment declaring the class action moot are reversed. In the class action case, the plaintiff and all the other second lien bondholders are entitled to judgment against Shelby County for the face amount of the second lien bonds held by them, in addition to pre-judgment interest thereon from and after July 1, 1974. Costs in this cause are taxed to the defendant Shelby County, for which execution may issue, if necessary.

NEARN, P.J. (W.S.), and CRAWFORD, J., concur.